NO. 07-02-0036-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 13, 2002

_____

REGINA MALNAR,

Appellant

v.

KENNETH W. MECHELL and VIRGINIA MECHELL,

Appellees

_____

FROM THE 217th DISTRICT COURT OF ANGELINA COUNTY;

NO. CV-32800-00-2; HON. DAVID V. WILSON, PRESIDING

_____

Before QUINN and REAVIS, JJ., and BOYD, SJ.[1]

In three issues, appellant Regina Malnar (Malnar) complains of a summary judgment granted in favor of appellees Kenneth Mechell and his wife Virginia Mechell (hereinafter referred to collectively as the Mechells). The latter sued Malnar (via trespass to try title) to obtain a judgment adjudicating them title to a house and the realty on which it stands. Three issues are presented for review. Each involves the Mechells' compliance with the terms of the Texas Property Code. That is, she alleges that they failed to prove,

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. TEX. GOV'T CODE ANN. §75.002(a)(1) (Vernon Supp. 2002).

as a matter of law, that they afforded her the notice of their intent to rescind allegedly due her under those provisions. We reverse the judgment.

### *Background*

Malnar and the Mechells executed a contract for the sale of real property (the contract) on August 22, 1997. The realty consisted of a house and the land on which it stood. Furthermore, its purchase price was $85,000. Of that $85,000, Malnar was deemed to have paid $14,395 at the time the contract was executed.[2] The balance, however, was to be paid in monthly installments of $561.31, the first coming due on September 22, 1997, and the remainder coming due on the 22nd of each ensuing month.

Several years later, Malnar defaulted on her obligation. According to the summary judgment evidence provided by the Mechells, she failed to pay the November 22, 1999 payment and at least one other. This circumstance caused the Mechells, on November 23, 1999, to send her (through their attorney) a written notice of default. In that notice, the Mechells informed Malnar that two installments were outstanding and that the sum due totaled $1,601.04. Furthermore, of that sum, $135.40 constituted principal, $987.22 constituted interest, and $478.42 constituted escrow. Malnar was also told, via the letter, that the Mechells intended to cancel the contract if she did not cure the default by December 23, 1999.

Needless to say, Malnar did not cure the default by December 23, 1999. Consequently, on December 23, 1999, counsel for the Mechells sent Malnar written notice stating that the contract was canceled and that her interest in the realty was forfeited.

---

[2]She actually was given a credit of $14,395.08 against the purchase price.

After filing the suit from which this appeal arose, the Mechells sought summary judgment.[3]  In their motion they alleged that they "provided [Malnar] all notices required by law in a timely manner and in accordance with all provisions of the Texas Property Code."  The trial court granted the motion and stated in its judgment that the movants "have taken all necessary and lawful steps to effect a cancellation of the contract for deed . . . and the eviction of the Defendant . . . ."

### Standard of Review

The standards of review governing appeals from summary judgments are well-settled.  Rather than reiterate them, we refer the parties to *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex. 1985) and *Kimber v. Sideris,* 8 S.W.3d 672, 674-75 (Tex. App.—Amarillo 1999, no pet.).

Next, the extent of the prior notice which the Mechells were to afford Malnar depends upon whether the realty was used or to be used for residential purposes.  If it was so used, then the provisions of the Texas Property Code controlled, as those provisions existed before the 2001 amendments.[4]

Next, according to §5.062 of that Code, the seller could declare forfeiture and rescind the contract 15 days after affording the seller notice of his intent to do so if the buyer had paid less than 10% of the sales price.  Act of May 27, 1995, 74th Leg., R.S. ch.

---

[3]Actually, they did so twice.  The first motion was granted by the trial court but reversed on appeal. The appellate court held that the Mechells failed to show ownership of the property and, therefore, their right to summary judgment.  *Malnar v. Mechell*, No. 09-00-312-CV, slip op., 2001 Tex. App. LEXIS 488 (Tex. App.—Beaumont January 25, 2001).

[4]Since the cancellation occurred in 1999, the version of the Code in existence at that time, *i.e.* the 1995 version, applies.

994, §2, 1995 Tex. Gen. Laws 4982-83. If the buyer had paid 10% but less than 20%, then the seller had to wait 30 days. *Id.* If 20% or more of the price had been paid, then the buyer was entitled to 60 days prior notice. *Id.* Finally, if the notice was sent by mail, then the notice was deemed "given when it [was] mailed to purchaser's residence or place of business."[5] With this in mind, we turn to the facts of this case.

### *Application*

*Issue Three*

We initially address Malnar's third issue given its ease of disposition. In it, she argues that a material issue of fact exists regarding whether she paid 20% or more of the purchase price by the time the Mechells notified her of their intent to rescind. We disagree and overrule the issue.

In reading the record in a light most favorable to Malnar, *see Miller v. Galveston/Houston Diocese,* 911 S.W.2d 897, 898-99 (Tex. App.—Amarillo 1995, no writ) (obligating us to so read the record), we discover that she initially paid $14,395.08 for the realty and then made 24 monthly payments of $561.31. According to the notice of default, each payment consisted of principal in an amount approximating $67.70.[6] If one were to multiply 67.70 by 24, he would derive a sum of $1,624.80. If that sum were then added to the initial $14,395.08 paid by Malnar, then the total amount of payments made against the original purchase price of $85,000 would be $16,019.88. Next, the latter is approximately

---

[5]Malnar does not contend that the notice was not sent to her residence or place of business.

[6]The $67.70 figure was derived by dividing $135.40 by two. Next, $135.40 equaled the total outstanding principal (and just the principal) which had accrued via the failure to make two monthly installments. So, if failing to pay for two months results in the total principal of $135.40 accruing, then principal for one month would be no more than $67.70.

4

18.8% of $85,000. And, because 18.8% is less than 20%, the Mechells established, as a matter of law, that they were not obligated to afford Malnar 60 days prior notice of their intent to rescind.

*Issues One and Two*

Next, we address the contentions asserted via the first and second issues. Therein, she alleges that a material issue of fact exists regarding whether she was afforded 30 days prior notice of their intent to rescind as required by statute. We agree and sustain them.

In computing a period of days under the Texas Property Code, the first day is excluded from the calculation while the last day is included. TEX. GOV'T CODE ANN. §311.014(a) (Vernon 1998). For instance, in *Claybon v. State*, 672 S.W.2d 881 (Tex. App.—Dallas 1984, pet. ref'd), the court was asked whether the trial court afforded counsel ten days to prepare for trial as required by a statute there involved. Counsel was appointed on the 8th of July and trial started on July 18th. In applying to the circumstances before it a provision identical to §311.014 of the Government Code, the court held that counsel had only been afforded nine days preparation time, even though July 18th was the tenth day after July 8th. *Claybon v. State*, 672 S.W.2d at 882. So, what we learn from *Claybon* is that if a certain period must expire before an act can occur, the last day of the period must not only be included in the calculation but also expire *in toto* if one is to comply with §311.014(a).

Finally, so interpreting §311.014(a) in circumstances like those at bar would also comport with §5.061(2) of the Texas Property Code. This is true because that provision expressly requires the "expiration" of the time period before the seller can invoke his

5

remedy of rescission or forfeiture. Act of May 27, 1995, 74th Leg., R.S. ch. 994, §2, 1995 Tex. Gen. Laws 4982-83. If the 30th day has not expired, then the party has not complied with §5.061(2).

Here, summary judgment evidence appears of record illustrating that the Mechells rescinded or canceled the contract on December 23, 1999. This act was made manifest by a letter dated and mailed on December 23rd, though Malnar received it on the 24th. Simply put, December 23rd was the 30th day of the time period contemplated under §5.061(2). So, the Mechells invoked their remedy of rescission or forfeiture on the 30th day of the time period, and thereby denied Malnar the full 30 days she had to cure the default. *See id.* §5.063 (affording the buyer the opportunity to cure). And, because the statute required the *expiration* of 30 days before they could do so, they did not prove, as a matter of law, that they complied "with all provisions of the Texas Property Code" as alleged in their motion for summary judgment.[7]

Finally, and to the extent that the Mechells contend that §5.061 does not apply because there is no evidence that the contract involved realty used or to be used as a residence, we say the following. The term "residence" has been construed as the place where one actually lives or has his home. *Owens-Corning v. Carter*, 997 S.W.2d 560, 571

---

[7]We did not ignore the Mechells' contention that because Malnar received notice of their act on the 24th, they complied with the Code. Section 5.061 does not state that the seller can rescind before or on the 30th day as long as notice of the rescission is not received until sometime thereafter. It says that 30 days must expire before they can rescind. Furthermore, if the date on which notice is received constitutes the pertinent date, then we must still conclude that Malnar received notice before the expiration of 30 days. This is so because §5.062(c) of the Texas Property Code states that "[n]otice by mail is given when it is mailed . . . . " Act of May 27, 1995, 74th Leg., R.S. ch. 994, §2, 1995 Tex. Gen. Laws 4982-83. And, the record illustrates that the notice here was mailed on December 23rd. So, it appears that Malnar received notice of the cancellation on December 23rd and not the 24th.

(Tex. 1999), *cert. denied,* 528 U.S. 1005, 120 S.Ct. 500, 145 L.Ed.2d 386 (1999).  It connotes a home and a fixed place of habitation to which one intends to return when away. *Id.* This does not mean, however, that one must be physically present within the home to claim it as a residence.  He may well live temporarily in one place while maintaining his residence at another.  *See Tovar v. Board of Trustees*, 994 S.W.2d 756, 762 (Tex. App.—Corpus Christi 1999, pet. denied) (stating that if a person moves to a new location only temporarily, presently intending to return to the previous place of habitation, the person does not lose his residence).  And, that he leased the abode while physically absent from it does not mean, in and of itself, that the abode was no longer his residence. *Kirk v. Barnett*, 566 S.W.2d 122, 123 (Tex. Civ. App.—Houston [14th Dist.] 1978, no writ).

Next, in again viewing the evidence and reasonable inferences therefrom in a light most favorable to Malnar, we find the following in the record.  First, after executing the contract, Malnar moved into and lived in the house.  Within a year, however, she "moved out."  It was left vacant for several months before she rented it to a third party.  The lessee then vacated the premises in May of 1999.  And, though the Mechells asserted that it was vacant until January of 2000, they nevertheless attested that Malnar's young children were in the house (along with a mattress and refrigerator) when they attempted to gain possession of it on December 27, 1999, four days after terminating the contract. Furthermore, during an encounter with the Mechells on that date, *i.e.* December 27th, Malnar informed them that she "was going to move back in" and, according to them, "she did."  The foregoing constitutes some evidence from which a jury could reasonably infer that the contract involved real property used or to be used as Malnar's residence.  Again,

7

she bought the house, moved into it, lived there, moved out, and then returned.[8] And, that she rented the facility to a third party does not establish, as a matter of law, either that she abandoned it as a residence or that it was not used or to be used as a residence. *Kirk v. Barnett, supra*. Thus, at the very least, a material issue of fact exists regarding whether the realty was used or to be used as a residence for purposes of §5.061 of the Texas Property Code.

Accordingly, the judgment of the trial court is reversed and the cause is remanded for further proceedings.

Brian Quinn
Justice

Publish.

---

[8]When she actually return cannot be divined from the record. All we know is that her children were there when the Mechells attempted to gain possession of it and that Malnar informed the Mechells of her intent to return to the abode.