**Forrest DICKEY, Jr. and Rose Ann Dickey, Appellants,**

v.

**McCOMB DEVELOPMENT CO., INC., Appellee.**

No. 04–02–00289–CV.

Court of Appeals of Texas, San Antonio.

June 25, 2003.

Bryan Patrick Fowler and William T. Fowler, Conroe, for Appellee.

Alan L. Tinsley, Madisonville, for Appellant.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, and SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by PAUL W. GREEN, Justice.

This case arises from a wrongful termination of contract suit. Appellants Forrest and Rose Ann Dickey filed suit against Appellee McComb Development Co., Inc., (McComb) claiming that McComb wrongfully terminated the parties' contract for the sale of land, failed to provide proper notice of a default in payment for the land, and failed to give the Dickeys a sufficient opportunity to cure the default. McComb filed a counterclaim, alleging that the Dickeys breached the contract. McComb also sought a declaratory judgment that the notice provisions advocated by the Dickeys were inapplicable to the case at hand. *See* Tex. Prop. Code Ann. §§ 5.061–.063 (Vernon 1995).[1]

---

1. Amended by Acts 1995, 74th Leg., ch. 994, § 2, eff. Sept. 1, 1995. In September 2001,

The trial court found in favor of McComb, granting a take nothing verdict in its favor. The Dickeys now appeal in two issues.

## Background

On February 25, 1992, Appellants Forrest and Rose Ann Dickey entered into a contract for deed with Appellee McComb Development Co., Inc., for the purchase of approximately 1.24 acres of land in Montgomery County, Texas. Subsequent to entering into the contract, the Dickeys made several improvements to the property and moved onto the land. Several years later the Dickeys found it necessary to move off of the property because of a change in deed restrictions. After a failed attempt to sell the property, the Dickeys eventually leased the land to a third party.

On or about June 10, 2000, the Dickeys received a notice from McComb which stated that the Dickeys were delinquent in the payment of their monetary installments for April and May of 2000 and had also failed to pay certain property taxes. The notice informed the Dickeys they had 30 days, until July 13, 2000, to correct these defaults or the contract would be terminated and the Dickeys would lose their interest in the property. On July 14, 2000, the Dickeys tendered the appropriate sum to McComb.[2] McComb returned the check two days later with a letter from its attorney, stating the payment was rejected because it was one day late and terminating the Dickey/ McComb contract.

The Dickeys subsequently brought suit against McComb for wrongful termination of the contract, alleging that McComb failed to comply with § 5.061 of the Texas Property Code. McComb filed a counterclaim, alleging breach of contract and seeking a declaratory judgment that the Texas Property Code notice provisions did not apply. Following a bench trial, the trial court rendered a take nothing judgment in favor of McComb, finding Texas Property Code §§ 5.061–.063 to be inapplicable and holding that additional notice was not required prior to the cancellation of the Dickeys' contract. The trial court awarded title and possession of the land to McComb and refused to award attorneys fees to the Dickeys. The Dickeys now appeal in two issues.

## Texas Property Code § 5.061

■ In their first issue, the Dickeys claim the trial court erred in finding there was no wrongful termination of the contract between themselves and McComb. Although the Dickeys do not specifically frame this issue as one of sufficiency, they are essentially arguing that the evidence submitted to the trial court was legally and factually insufficient to support the trial court's conclusion.

In determining whether the evidence presented at trial is legally sufficient to support a trial court's finding, we consider only the evidence most favorable to the court's decision and disregard all evidence and inferences to the contrary. *Lenz v. Lenz*, 79 S.W.3d 10, 17 (Tex.2002). If there is more than a scintilla of evidence to support the findings, the legal sufficiency challenge will fail. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors*, 960 S.W.2d 41, 48 (Tex.1998). In reviewing the factual sufficiency of evidence, we examine the evidence in a neutral light and will reverse only if the chal-

this section was amended and renumbered to section 5.064.

**2.** The Dickeys paid $403.00, the combined amount of the installments due for April and May. The appropriate property taxes had previously been paid to the proper taxing authority.

lenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

At trial, the Dickeys argued that Texas Property Code sections 5.061, 5.062, and 5.063 are applicable to their situation, mandating a 60 day cure period before a seller may enforce a forfeiture of a purchaser's interest when (1) at least 20% of a property's purchase price has been paid and (2) the property is "used or to be used as the purchaser's residence." *See* Tex. Prop. Code Ann. § 5.061(Vernon 1995). Because both parties have stipulated to the fact that the Dickeys had paid more than 20% of the total purchase price at the time of the alleged breach, the only issue to be resolved by this Court is whether the Dickeys' professed intent to reside on the property at some undisclosed future date is sufficient to require the application of the Property Code's notice provisions. McComb contends the provisions do not apply because there is no evidence that the contract involved realty used or to be used as a residence.

The term "residence" has been construed as the place where one actually lives or has his home. *Owens Corning v. Carter,* 997 S.W.2d 560, 571 (Tex.1999); *Malnar v. Mechell,* 91 S.W.3d 924, 928 (Tex.App.-Amarillo 2002, no pet.). "Residence" connotes a home and a fixed place of habitation to which one returns when away. *Owens Corning,* 997 S.W.2d at 571. An individual does not, however, have to be physically present within the home in order to claim it as his residence. He may live temporarily in one place while maintaining his residence in another. *Malnar,* 91 S.W.3d at 928. In addition, the fact that an individual leases the abode while physically absent from it does not mean, by itself, that the abode is no longer his residence. *Malnar,* 91 S.W.3d at 929; *Kirk v. Barnett,* 566 S.W.2d 122, 123 (Tex. Civ.App.-Houston [14th Dist.] 1978, no writ).

At trial, the Dickeys offered the testimony of Rose Ann Dickey to prove their intent to reside on the property in question in spite of the fact that they did not actually live on the land at the time of the alleged breach. Rose Ann testified that the Dickeys made improvements to and lived on the land in their mobile home from 1992 to approximately 1998. In 1998, the Dickeys were forced to move off of the land due to a change in land restrictions and their desire to continue their daughter's participation in raising and showing animals. After moving, the Dickeys attempted to sell the property and, when that venture failed, leased the property to a third party.[3] Rose Ann also testified that the family did not receive mail at the property, had their homestead designation removed from the property by the taxing authority, and were no longer registered to vote or employed in Montgomery County. Finally, Rose Ann testified that she and her husband intended to move back onto the property in question no sooner than 2007, five years from the time of trial, when their daughter graduated from high school. In addition, Rose Ann was not able to commit to this date, stating that she "can't predict the future" and that whether they moved depended on her daughter. The Dickeys did not produce any evidence of definite plans or preparations to return to the property in question.

Viewed in a light most favorable to McComb, a trier of fact could reasonably

---

**3.** The Dickeys appear, from the record, to have leased the property from 1998 until the time of trial in 2002. The leasing of the land was in violation of the executory contract the family had with McComb.

infer from the record that the property was not going to be used as a residence by the Dickeys. Because there is more than a scintilla of evidence to support the trial court's finding, we find the evidence to be legally sufficient. *See Lenz*, 79 S.W.3d at 17. Likewise, even viewing the evidence in a neutral light, we can not say the evidence was so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Cain*, 709 S.W.2d at 176. The evidence, then, is also factually sufficient to support the trial court's decision.

### Waiver/ Acceptance

■ The Dickeys also argue, in the alternative, that even if the notice provisions do not apply, the trial court erred in holding the default was not cured. The Dickeys contend that McComb's acceptance of their late payment, in effect, served as a waiver of any forfeiture.

In its brief, McComb argues the Dickeys waived this argument because their original petition asserted that McComb refused, rather than accepted, their attempt to cure the default. However, at trial, evidence was introduced to the contrary with no objection. Assuming the Dickeys did not waive this issue on appeal, we must determine whether the evidence presented was sufficient to support the trial court's finding regarding the acceptance or refusal of the late payment.

At trial Rose Ann Dickey testified that her mother delivered the check to Dorothy McComb on the morning of July 14, the day after the payment was due, and that Dorothy accepted the check. In contrast, Dorothy McComb testified she had her attorney begin the foreclosure procedures on the evening of July 13, once the payment was not received, and that she informed Rose Ann's mother the payment was too late, to which Rose Ann's mother

responded, "Take it up with Rose Ann" and handed her the money. Although Dorothy testified that she did physically take the payment from Rose Ann's mother, at no time during her testimony did she appear to have accepted the payment as timely and curative of the default.

Again, viewing the evidence in the light most favorable to the court's ruling, there exists more than a scintilla of evidence that Dorothy McComb did not accept the payment as curing the default. *See Lenz*, 79 S.W.3d at 17. Additionally, the court's holding is not against the great weight and preponderance of the evidence. *See Cain*, 709 S.W.2d at 176. As such, we find the trial court's decision supported by both legally and factually sufficient evidence. The Dickeys' first issue is therefore overruled.

### Attorneys Fees

■ In their second issue, the Dickeys contend the trial court erred in disallowing their attorneys fees. The Dickeys argue the trial court should have awarded them reasonable and necessary attorneys fees, taking judicial notice of the "usual and customary attorney's fees ... without further evidence." Tex. Civ. Prac. & Rem. Code Ann. § 38.004 (Vernon 2003). In their original petition, the Dickeys argue that they are entitled to attorneys fees pursuant to section 37.009 of the Texas Civil Practice and Remedies Code. On appeal, however, they claim they should be awarded the fees under section 38.004. Section 38.004 is only applicable to the recovery of attorneys fees when a party pleads under Section 38.001. *See Hasty v. Inwood Buckhorn*, 908 S.W.2d 494, 503 (Tex.App.-Dallas 1995, writ denied). When a claim for fees does not fall under section 38.001, the trial court may not take judicial notice of attorney's fees as requested by the Dickeys. *Coward v. Gate-*

*way Nat'l Bank,* 525 S.W.2d 857, 859 (Tex. 1975); *Hasty,* 908 S.W.2d at 503. Because the Dickeys did not request attorneys fees under sections 38.001 or 38.004 in their original pleadings, they have waived any claim for attorneys fees under this statute. Perhaps most importantly, the Dickeys did not prevail on their claims. We overrule the Dickeys' second issue.

The judgment of the trial court is affirmed.

Concurring opinion by: CATHERINE STONE, Justice.

Concurring opinion by: CATHERINE STONE, Justice.

I concur in the judgment of the majority. I write separately, however, because I believe the majority has considered irrelevant evidence in reviewing the trial court's decision. It is undisputed that the Dickeys do not currently reside on the subject property, thus the only question for the trial court to determine was whether the property was "to be used as the purchaser's residence" at some point in the future. *See* TEX. PROP.CODE ANN. § 5.062 (a) (Vernon Supp.2003). In answering this question, there is no need to consider that the Dickeys do not receive mail at the property, they do not have a homestead exemption on the property, or that they are not registered to vote or employed in the county where the property is located. Since an intent to reside on the property in the future is sufficient to gain the protections of the Property Code, where the Dickeys reside or vote or work at the present time is of no consequence. What is of consequence, however, is Mrs. Dickey's statement that they plan to return to the property no sooner than 2007. The trial court was entitled to assess the credibility of this testimony in light of the absence of any definite plan or preparations for a return to the property, and in light of the Dick-

eys' attempt to sell the property. I concur with the majority that the trial court, as the trier of fact, could reasonably infer from this record that the Dickeys did not in fact intend to use this property in the future as a residence.

I am compelled to note, however, that the facts of this case display the inherent unfairness that can arise when a contract for deed is employed as a means of obtaining real property. *See* Pamela Brown, *Lawyers Team Up to Help in Colonia,* 63 TEX. B.J. 462 (2000) (noting that contracts for deed often are high interest notes that are virtually impossible to pay off and that families can pay for years only to find that if they missed one payment they can lose the property, including any improvements that had been made). Indeed, in this case it is undisputed that despite a history of several late payments, the Dickeys did cure any missed or late payments. It appears that after paying more than $200 per month for eight years, and after making improvements to the property, the Dickeys have lost their interest in the property because they tendered their check one day late. Sadly, Texas law permits this to occur.