NO. 12-02-00249-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
BILLY JOE GIBSON,                                       §                 APPEAL FROM THE THIRD
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

MICHAEL FAUBER,
APPELLEE                                                        §                 ANDERSON COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Billy Joe Gibson appeals from the trial court’s judgment, which favored Michael Fauber,
plaintiff below. Upon the jury’s verdict, the trial court entered judgment awarding the property at
issue, actual damages, exemplary damages, and attorneys’ fees to Fauber. In seven issues, Gibson
contends Fauber is entitled to none of these awards, the trial court’s judgment should be reversed,
and judgment should be rendered in Gibson’s favor. We modify the judgment to delete the awards
for loss of personalty, loss of use and enjoyment of realty, and attorneys’ fees. We affirm as
modified.
 
Background
            In the summer of 1998, Fauber was in jail in San Patricio County. Charges were also pending
against him in Anderson County. There were numerous discussions between Gibson, who is a bail
bondsman, Ginger Nicholas, Lisa Richardson, and Fauber regarding the subject of bonds for
Fauber’s release. At the time of these discussions, Nicholas was married to, but estranged from,
Fauber and romantically involved with Gibson. Richardson was Fauber’s girlfriend at the time.
            For approximately twenty years, Fauber had lived in a house purchased by his mother, who
had passed away in 1990. His mother had arranged for the house to be placed in trust for Fauber’s
benefit upon her death. The deed to the property was in the trustee’s name. Fauber testified that the
house was worth approximately $40,000.00 and that he also owned personal property worth
$30,000.00 at that location.
            While Fauber was incarcerated, the trustee deeded the property to him. On different days in
August 1998, Nicholas and Richardson, pursuant to a power of attorney given by Fauber to each of
them, each signed deeds purporting to convey the property to Gibson. On August 14, unbeknownst
to Fauber, Nicholas obtained a divorce from Fauber after she signed his name to a waiver of citation
notarized by Carolyn Prater, Gibson’s secretary. Sometime in August, Richardson filed a complaint
with the Anderson County Bail Bond Board because she was unhappy that Gibson had not arranged
for Fauber’s bond and gotten him out of jail. 
            Eventually, Gibson arranged for Fauber’s San Patricio County bond, which was $10,000.00,
paying $1,500.00 cash to the bondsman in San Patricio County on Fauber’s behalf. Upon his release
from the San Patricio County jail on August 31, 1998, Fauber was immediately transferred to the
Anderson County jail. On that same day, while in jail, Fauber signed a warranty deed that had been
filled out by Gibson, purporting to convey Fauber’s house to Gibson. The following day, Gibson
arranged for Fauber’s release on bond. They immediately went to Gibson’s office where Fauber
signed additional papers including a letter to the Anderson County Bail Bond Board, a revocation
of Richardson’s power of attorney, and a promissory note for $10,000.00. Fauber lived in the house
he purportedly deeded to Gibson until Fauber’s arrest for the offense of felon in possession of a
firearm on April 21, 1999.
            Fauber filed his original petition in this cause of action on May 14, 1999 while still in
custody. The original petition was one for declaratory judgment seeking a declaration that Fauber
is the sole owner of the home and that the deed to Gibson is void as a matter of law. In his first
amended petition, Fauber named as defendants Gibson, Nicholas, Prater, and Old Republic Surety
Company. He asserted that the conduct of the defendants amounted to common law fraud, statutory
fraud, and conspiracy to commit fraud. Fauber later settled with Old Republic Surety and dismissed
it from the suit. He nonsuited Nicholas and Prater at the close of evidence.
            The jury found that Gibson committed fraud, that the home was Fauber’s homestead, and that
the deeds conveying Fauber’s home to Gibson were intended to be a mortgage against the home. 
It awarded $18,341.00 for the loss of personalty, $5,333.00 for the loss of use and enjoyment of the
real property, $41,667.00 as exemplary damages, and a total of $19,000.00 for attorneys’ fees. The
trial court’s judgment incorporates the jury’s findings, quiets title in Fauber, and declares the three
deeds void.
 
Evidence of Fraud
            In his fourth issue, Gibson asserts there is legally and factually insufficient evidence to
support the jury finding that he committed fraud against Fauber. He argues there is no evidence he
made a misrepresentation with the intent that Fauber rely on it. He contends the evidence establishes
that the parties had an agreement that Gibson would take the house in exchange for the bond. He
further argues that the jury’s finding that the deeds were intended to be a mortgage is inconsistent
with a finding that Gibson committed fraud. Gibson also asserts there is no evidence he knew the
property at issue was Fauber’s homestead. 
The Agreement
            Fauber had failed to repay a prior bond that Gibson had obtained for him. Gibson filed suit
on that debt and a judgment was rendered against Fauber in 1992 for $4,435.00. Gibson testified
that Fauber owed him approximately $9,000.00 for the judgment, including post-judgment interest,
$1,500.00 for the San Patricio County bond, $100.00 for groceries, $40.00 for gas, $10,000.00 for
the Anderson County bond, $150.00 for phone calls, and $34.00 for a motel room, for a total of
$20,824.00. Gibson testified that Fauber agreed to transfer the property to him for what he owed
Gibson. That transaction would wash the slate clean and Fauber would no longer owe Gibson
anything. However, Gibson testified that he gave Fauber the bond for the “collateral” Fauber
transferred to him. Then, Gibson again explained that the August 1998 agreement was that Fauber
would deed Gibson the property for what he owed on the judgment and the two recent bonds. 
Gibson said he treated Fauber like a “credit” customer, charging him twenty percent for the bond. 
However, he admitted this was not a credit transaction and said he was taking the property as cash. 
Gibson admitted there is no document setting out what Fauber owes, showing that he and Fauber
were in agreement, and signed by both parties. 
            Fauber executed a deed on August 31, 1998, the terms of which had been handwritten by
Gibson. Gibson testified that after he got Fauber out of jail and Fauber deeded the property to him,
Gibson owned it outright and Fauber had paid the debt in full. He filed the deed, but has never paid
the taxes on it and has never done anything with the property. He denied trying to take the property
away from Fauber. 
            Gibson then testified that the idea of putting the property up for collateral and giving it back
to Fauber when he paid off the debt with cash was discussed the day after he got Fauber out of jail. 
Gibson explained that after Fauber signed the deed to him, Fauber, through Nicholas, opened up
discussions again. Gibson testified that, three to five days later, he told Fauber he would deed the
property back if Fauber paid the debt off. In this new agreement, made after Fauber was out of jail,
Gibson and Nicholas agreed to allow Fauber to stay in the house for seven months. At the end of
seven months, if he repaid what he owed, Gibson would deed the property back to Fauber. He
wanted to give Fauber time to get back on his feet. Gibson did not ask him to pay rent during the
seven months. Gibson testified that no action was taken to remove Fauber at the end of that time
period. However, that time period would have ended in early April 1999. Fauber was arrested
April 21, 1999, after federal law enforcement officers somehow learned that he had weapons in his
home.
            Gibson stated that he did not trust Fauber because he never paid the 1992 judgment. 
Therefore, he wanted something in return for the bond. Gibson explained that he has been involved
in real estate all his life. On numerous occasions, he has taken a deed of trust on clients’ houses
when making their bond, and he has taken a mortgage on someone’s property through bail bonding. 
He testified that he knew he could not take a mortgage on the house, and he could not get a valid lien
on the property because it was not in Fauber’s name. Gibson wanted the property in his name
because he did not trust Fauber. Gibson contacted the appraisal district to find out the value of the
property. Gibson denied duping Fauber into signing a deed when he meant to sign a deed of trust.
            Fauber testified that his agreement with Gibson was for Gibson to hold the house as collateral
until Fauber paid him off. When Fauber paid the debt in full, Gibson was to take the lien off the
house. Fauber testified that ownership of the house would remain in his name. In August 1998, he
did not know it was illegal to put a mortgage on a homestead. Based on a charge of five percent of
a $10,000.00 bond and a $50,000.00 bond, he believed he owed Gibson only $3,000.00. Gibson then
told him he was going to charge him ten percent for the San Patricio County bond. Then he expected
to owe $4,000.00. Fauber never agreed to pay the 1992 judgment. Gibson never gave him anything
in writing showing what he owed.
             While in jail, Fauber enlisted the help of his girlfriend, Richardson, and his wife, Nicholas,
to help find a bondsman and then to help negotiate the fee. He never asked them to prepare any
paperwork. Gibson was going to prepare the lien. Richardson took it upon herself to complain to
the bail bond board that Gibson had not gotten Fauber out of jail in a timely fashion. 
            On September 1, 1998, Fauber went to Gibson’s office after getting out of jail. There, he
signed a letter to the bail bond board, which was handwritten by Prater, and which states: “Mr.
Gibson has not tried to defraud me.” He also signed a revocation of Richardson’s power of attorney. 
Gibson and Fauber delivered the letter and filed the revocation that same morning. Fauber testified
that he did not care if Richardson complained to the bail bond board or whether her power of
attorney was not revoked. He testified that Gibson “more or less coerced” him into signing the
documents, telling him that if he did not, he would be back in jail. Fauber said the documents had
been prepared and notarized by Prater before he arrived at the office. Fauber went along with what
Gibson wanted in order to get out of jail. He never intended to give Gibson his home. He
understood the transaction to be a lien. Fauber testified that he feels Gibson and Nicholas cheated
him out of his property because the agreement was to create a lien against the property, not to sell
it. Fauber testified that just before he was arrested in April 1999, Gibson tried to evict him.
            Carolyn Prater was Gibson’s secretary from 1989 until shortly before the trial. She was
present on September 1, 1998 when Fauber got out of jail. She denied that the documents were
ready for his signature and pre-notarized. She said he dictated them to her, signed them, and then
she notarized them. She testified that it was Gibson’s idea to write the letter to the bail bond board. 
She heard discussions about the terms of the parties’ agreement. She testified that she was under the
impression that Fauber agreed to sign the deed to Gibson and then they would work out something
regarding payments. Fauber signed a paper indicating he had until the next March to pay what he
owed. She said she was under the impression that Fauber had already put up his property and signed
a deed over to Gibson. Then Fauber was to pay Gibson over time to get his property back. Fauber
would get his property back when he paid Gibson everything he owed him. Her impression was that
Fauber told Nicholas to sign a deed to Gibson and that Fauber signed a deed to Gibson while still
incarcerated. She testified that she did not hear what their plans were after Fauber signed the deed
to Gibson. She admitted that when she gave deposition testimony, she testified that Fauber was
going to put up the deed to the property and that she had heard Gibson say that when the $10,000.00
was paid back, he would give the deed back. 
            On cross-examination, Prater explained that she was told that Fauber asked Nicholas to deed
the property to Gibson and, after Fauber got out of jail, they would work out how he would pay it
off to get it deeded back to him. She testified that Gibson did not tell her to write out the letter to
the bail bond board and the revocation of Richardson’s power of attorney before Fauber got to the
office. She testified that Fauber told her what to write. She stated that Gibson did not make Fauber
sign anything and never told him he would go back to jail if he did not sign. Prater testified that
Nicholas told her that Fauber told Nicholas to do whatever it takes to get him out of jail, even if that
meant signing the deed to Gibson. The note Fauber signed was to guarantee he would repay the
bond fees.
            Ginger Nicholas testified that Fauber wanted her to get him out of jail, no matter what it took. 
She talked to Gibson about getting Fauber out. It took several weeks to get everything “lined out.” 
She explained that Fauber was expecting some disability pay and planned to use that money to repay
Gibson. The agreement was for Fauber to put the house up as collateral and then Fauber and Gibson
would work out the details. She testified that she understood that the house was not to be sold but
was to be used as collateral. It would become Gibson’s if Fauber did not pay him by March 1, 1999. 
She explained that this was like a mortgage where you borrow the money and pledge the collateral
and if you do not pay the note, they can come take the collateral. Fauber thought he would get the
settlement and be able to pay Gibson with that money. Nicholas signed a deed on August 13, 1998
to pledge Fauber’s property to secure Gibson’s payments for six months. 
            Nicholas explained that one of her purposes during the negotiations was to protect Fauber’s
homestead. However, she also said the “major thing” was to get Fauber home “at any cost.” She
reiterated that the deal was to secure the debt with the property. Fauber agreed to deed the property
to Gibson and, seven months after his release, if Fauber had paid Gibson, the property would be
deeded back to Fauber. Nicholas testified that Gibson insisted that she and Richardson sign deeds. 
She stated that, when she signed the deed, she was not aware that the property was being put in
Gibson’s name. To her, the deed represented getting Fauber home. When he got home, he and
Gibson could work out the differences. She said that she, Gibson, and Prater did not have an
agreement to take Fauber’s property away. 
            Nicholas testified that Gibson wanted the property for the bond. She said that if they wanted
Fauber out of jail, they had to sign the deeds. She did not know the property would immediately be
transferred to Gibson’s name. Rather, it was to remain Fauber’s property and if Fauber had not paid
Gibson by March 1, 1999, the property would legally be Gibson’s. She testified that she did not
want to defraud Fauber out of his property, did not intend for Fauber to lose his home, and did not
know the legal effect of signing the deed. She thought she was putting the house up as collateral and
that was everyone’s agreement. She testified that Gibson wanted her to testify that he did nothing
wrong and that everyone has put pressure on her to say things that were not true.
The Charge
            Although Fauber pleaded both statutory fraud and common law fraud, the trial court charged
the jury only on common law fraud. The jury answered “yes” to Question 2, asking whether Gibson
committed fraud against Michael Fauber. In answer to Question 1A, the jury found that the property
at issue was Fauber’s homestead. In answer to Question 1, the jury found that the deeds which
conveyed Fauber’s home to Gibson were intended to be a mortgage against the home.
Standard of Review
            If an appellant is attacking the legal sufficiency of an adverse finding of an issue on which
he did not have the burden of proof, the appellant must demonstrate on appeal that there is no
evidence to support the adverse finding. See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). 
In reviewing no evidence issues, the reviewing court must consider only the evidence and inferences
tending to support the trial court’s finding, disregarding all contrary evidence and inferences. Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). If there is any evidence of
probative force to support the finding, the no evidence issue must be overruled and the finding
upheld. ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997). When the evidence
offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of
its existence, no more than a scintilla of evidence exists and, in legal effect, is no evidence. Kindred
v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). However, if the evidence supplies some
reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact,
some evidence or, in other words, more than a scintilla of evidence exists. Id.
            If a party is attacking the factual sufficiency of an adverse finding on an issue to which the
other party had the burden of proof, the attacking party must demonstrate that there is insufficient
evidence to support the adverse finding. See Croucher, 660 S.W.2d at 58. In addressing a factual
sufficiency of the evidence challenge, this Court must consider and weigh all of the evidence and
set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). This Court is not a fact
finder and may not pass on the credibility of the witnesses or substitute our judgment for that of the
trier of fact. Clancy v. Zale Corp., 705 S.W.2d 820, 826 (Tex. App.–Dallas 1986, writ ref’d n.r.e.). 
Findings of fact are the exclusive province of the fact finder. Bellefonte Underwriters Ins. Co. v.
Brown, 704 S.W.2d 742, 744 (Tex. 1986). Accordingly, if there is sufficient competent evidence
of probative force to support the finding, it must be sustained. Beall v. Ditmore, 867 S.W.2d 791,
795-96 (Tex. App.–El Paso 1993, writ denied). Where there is conflicting evidence, the jury’s
verdict on such matters is generally regarded as conclusive. Id. at 796.
Applicable Law
            The elements of common law fraud are that (1) a material representation was made; (2) the
representation was false; (3) when the representation was made, the speaker knew it was false or
made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker
made the representation with the intent that it should be acted upon by the party; (5) the party acted
in reliance upon the representation; and (6) the party thereby suffered injury. Eagle Prop., Ltd. v.
Scharbauer, 807 S.W.2d 714, 723 (Tex. 1990).
            Article 16, section 50(a) of the Texas Constitution provides that the homestead of a family
is protected from forced sale or the payment of debts except for certain encumbrances attached to
the property that are specifically enumerated, including (1) purchase money; (2) ad valorem taxes;
(3) an owelty partition order or agreement; (4) a refinanced lien against the homestead; (5) a lien
used for constructing new improvements, repairs or renovations; (6) a credit extension; or (7) a
reverse mortgage. Tex. Const. art. XVI, § 50(a). No mortgage, trust deed, or other lien on the
homestead shall ever be valid unless it secures a debt described by article 16, section 50. Tex.
Const. art. XVI, § 50(c); see also Tex. Prop. Code Ann. § 41.001 (Vernon Supp. 2004).
Discussion
            We consider first the legal sufficiency of the evidence showing Gibson committed fraud
against Fauber. We consider only the evidence and inferences tending to support the jury’s finding. 
Gonzalez, 968 S.W.2d at 936. Fauber, who thought he owed only $4,000.00, testified that he agreed
that Gibson could take a lien on his home that would be removed when, in six months, he repaid
what he owed. Fauber said he never agreed to sell his property. Ownership of the house would
remain in Fauber’s name and the house would be held as collateral until the debt was paid. Fauber
said he never agreed to pay the 1992 judgment. The deed he signed was in Gibson’s handwriting
on a preprinted form. He claims he was required to sign the letter to the bail bond board, the
revocation of Richardson’s power of attorney, and the $10,000.00 lien or go back to jail. He said
Gibson tried to evict him from his home in April 1999.
            Prater testified that she was under the impression that Fauber put up his property, signed a
deed, and would pay over time to get his property back.
            Nicholas testified that the parties agreed Fauber was going to put up the house as collateral,
not sell it. She said the agreement was like a mortgage: they were going to secure the debt with the
property. They would work out the details later. However, Fauber planned to use the disability
settlement money to repay Gibson. Under their agreement, the house would be Gibson’s only if
Fauber did not pay by March 1, 1999. She testified that there was no agreement to take Fauber’s
property away. Nicholas testified that Gibson insisted they sign deeds to get Fauber out of jail, but
she did not know the legal effect of signing the deed. The deed she signed was prepared by Gibson’s
lawyer.
            Gibson testified that he originally intended to take the property in exchange for the debt and
that Fauber gave away property worth $40,000.00 to satisfy a $20,824.00 debt. Gibson filed the
deed, but did nothing else consistent with ownership. Fauber continued to live in the house without
paying rent to Gibson. Although Gibson testified that he could not get a valid lien on the property
because it was not in Fauber’s name, the property was in Fauber’s name two weeks before Fauber
signed the deed and Gibson bonded him out of jail. Gibson admitted he wanted the property in his
name because he did not trust Fauber.
            To the extent Gibson argues that there can be no fraud because of a new agreement made a
few days after Fauber got out of jail, we disagree. Gibson testified that, three to five days after
Fauber was released from jail, he agreed to allow Fauber to repay him to regain title to the property. 
Although this asserted new agreement is consistent with the agreement Fauber, Nicholas, and Prater
described as the only agreement, the argument cannot stand. The relevant time period for
determining whether there was fraud is the time leading up to, and the time at which, Fauber signed
the deed. Gibson asserts there is no evidence he knew the property was Fauber’s homestead. 
Neither a property’s homestead designation, nor Gibson’s knowledge of such, are elements of fraud. 
Therefore, whether there is evidence that Gibson knew the property was Fauber’s homestead is
immaterial to the issue of whether Gibson committed fraud. 
            Fauber, Nicholas, and Prater testified that the agreement was to put the property up for
collateral while Fauber made payments on the debt. Fauber intended to use his disability settlement
to repay Gibson. Fauber did not intend to give his property to Gibson, yet Fauber signed a deed,
prepared by Gibson, conveying his property to Gibson. This evidence, presented by the people
directly involved in the negotiations to get Fauber out of jail, constitutes probative evidence to
support the jury’s finding that Gibson made a material misrepresentation, with knowledge of its
falsity, with the intention that Fauber would act on the misrepresentation, and that Fauber did act in
reliance on the misrepresentation. See Scharbauer, 807 S.W.2d at 723. Therefore, Gibson’s no
evidence challenge fails. See McLaughlin, 943 S.W.2d at 430. 
            To review Gibson’s factual sufficiency challenge, we consider all of the evidence on the issue
of fraud. See Cain, 709 S.W.2d at 176. In addition to the evidence indicating there was a
misrepresentation, we consider the following evidence indicating there was not. Gibson testified that
Fauber agreed to transfer the property to him for what he owed Gibson. After getting the property
put in his name, Fauber executed a deed conveying the property to Gibson. Gibson had many years
of experience in real estate and therefore knew the effect of the deed. Fauber signed the letter to the
bail bond board stating that Gibson did not try to defraud him. Gibson denied trying to cheat Fauber
out of his property. Prater testified that she was told that Fauber asked Nicholas to deed the property
to Gibson. Nicholas told Prater that Fauber told Nicholas to do whatever it takes to get him out of
jail. Prater testified that Gibson did not make Fauber sign anything or threaten to send him back to
jail if he did not sign. Nicholas testified that Fauber told her to get him out of jail, no matter what
it took. 
            The jury, as fact finder, had the duty to pass on the credibility of the witnesses. See Clancy,
705 S.W.2d at 826. It was within its province to resolve conflicts in the evidence. See Beall, 867
S.W.2d at 796. While there was some evidence that Gibson did not try to defraud Fauber, there was
evidence that he did. The jury chose not to believe Gibson’s version of the agreement. 
            Gibson argues that a finding that the deeds were intended to be a mortgage is inconsistent
with a finding that Gibson committed fraud. We disagree. The actual effect of the August 31, 1998
deed from Fauber to Gibson was a conveyance, not a mortgage. The question did not specify whose
intention or point of view the jury was to consider. If the jury believed Fauber, Nicholas, and Prater
intended the deeds to be a mortgage, the finding is not inconsistent with its finding that Gibson
committed fraud.
            Weighing all the evidence, we cannot say the verdict is contrary to the overwhelming weight
of the evidence or that it is clearly wrong and unjust. See Cain, 709 S.W.2d at 176. We overrule
issue four to the extent it complains of the legal and factual sufficiency of the evidence to support
the jury finding of fraud.
Exemplary Damages
            Under this issue, Gibson also asserts the evidence is insufficient to support the jury’s finding
of fraud by clear and convincing evidence and therefore cannot support the finding of exemplary
damages. A plaintiff seeking the recovery of exemplary damages resulting from fraud must establish
the elements of fraud by clear and convincing evidence. Tex. Civ. Prac. & Rem. Code Ann.
§ 41.003(a)(1) (Vernon Supp. 2004-2005). For exemplary damages purposes, clear and convincing
evidence is defined as that “measure or degree of proof that will produce in the mind of the trier of
fact a firm belief or conviction as to the truth of the allegations sought to be established.” Tex. Civ.
Prac. & Rem. Code Ann. § 41.001(2) (Vernon Supp. 2004-2005). We review the record to
determine if the jury could have reasonably found that the fact was highly probable. See In re
G.B.R., 953 S.W.2d 391, 396 (Tex. App.–El Paso 1997, no writ). We consider all of the evidence
in making this determination. See In re D.E., 761 S.W.2d 596, 599 (Tex. App.–Fort Worth 1988,
no writ).
            The evidence supports an inference that Gibson orchestrated the entire deal. Fauber was in
a difficult situation with few choices. Gibson had the power to get him out of jail if Fauber agreed
to Gibson’s terms. According to Gibson, Fauber owed him $20,824.00 and Fauber agreed to give
him a piece of real estate with one home and one trailer house on it, worth approximately
$40,000.00, in order to extinguish the debt. Fauber believed he owed only $4,000.00. The evidence
supports a finding that Gibson fraudulently induced Fauber to sign a deed conveying his homestead
when Fauber intended only to put it up as collateral. Using a homestead as collateral would
constitute an illegal mortgage on a homestead. Gibson has experience buying and selling real estate
and was familiar with at least some of the applicable laws. Gibson wanted to collect on the 1992
judgment and, since he had known Fauber for twenty years, he knew that Fauber’s home was the
only thing of value that he had. Gibson did not trust Fauber to repay him and therefore wanted the
property in his own name. Gibson knew he could not use the homestead as collateral or use it to
collect on the 1992 judgment. But he wanted Fauber to pay what he owed. 
            The parties involved in making the agreement had conflicting stories about the terms of the
agreement. Prater testified that Gibson planned to give the deed back when Fauber repaid the
$10,000.00 note. Gibson testified that he never discussed that note with Fauber while he was in jail,
that is, during the negotiation period, because he did not trust Fauber to repay it. Nicholas said
Gibson was the one to arrive at the $10,000.00 figure, while Gibson testified that the note was done
by Prater as a matter of regular office practice, without his knowledge. Fauber testified that Gibson
charged him a greater percentage for the bond than he said he would. In spite of the fact that Gibson
characterized this transaction as a cash deal, he charged him the twenty percent he normally charges
credit customers. Gibson never provided Fauber with any documentation showing what Fauber
owed. There was evidence that Gibson coerced Fauber into signing the documents once released
from jail. The deeds signed by Nicholas and Richardson were prepared by Gibson’s lawyer. The
deed signed by Fauber was prepared by Gibson himself.
            Nicholas and Gibson were romantically involved at the time of the negotiations. Nicholas
had filed for divorce from Fauber in 1996, but did not pursue the divorce until 1998. She began
living with Gibson in 1998 and later married him. She amended the divorce petition to have all of
Fauber’s property awarded to her, apparently during the same time period as the negotiations. 
Nicholas testified that Gibson talked to her about the amended petition, paid for her lawyer, and told
her about the effect of a waiver of citation. Gibson denied assisting her with the divorce or advising
her about the citation. Nicholas and Gibson changed the locks on the house and removed the
personalty. Some of the property was taken to Gibson’s locked storage unit. Nicholas testified that
she had tried to help Fauber. By the time of the trial, there were bad feelings between Nicholas and
Gibson and their divorce was pending.
            This evidence shows that the parties have a history, the facts of which could suggest it was
not always harmonious. Gibson’s real estate experience and knowledge of the law would seem to
put him at an advantage over a man in Fauber’s position. Under these facts, the jury could have
reasonably found that, since Gibson wanted to be paid and did not trust Fauber, it was highly
probable that Gibson tried to procure payment through fraud. The record provides clear and
convincing evidence; that is, sufficient proof to produce in the minds of the jurors a firm belief or
conviction as to the truth of the allegations of fraud. See Tex. Civ. Prac. & Rem. Code Ann.
§ 41.001(2). Accordingly, we overrule issue four to the extent it complains of the sufficiency of the
evidence to support an award of exemplary damages. 
 
Homestead
            In his seventh issue, Gibson contends there is factually insufficient evidence to support the
jury’s finding that the property was Fauber’s homestead. He points out that Fauber never obtained
a homestead exemption from the local taxing authority and there were periods of time when he did
not live in the house. Therefore, this argument continues, Fauber cannot be entitled to rescission of
the deed on the basis that Gibson had acquired an impermissible mortgage on a homestead.
            A party claiming homestead protection has the burden to establish that the property is
homestead. Burk Royalty Co. v. Riley, 475 S.W.2d 566, 568 (Tex. 1972). To establish homestead
rights, a party must show overt acts of homestead usage and intention on the part of the owner to
claim the property as homestead. Wilcox v. Marriott, 103 S.W.3d 469, 472 (Tex. App.–San Antonio
2003, pet. denied). However, ownership of the property is not essential to the existence of a
homestead. Moore v. Graham, 29 Tex. Civ. App. 235, 237, 69 S.W. 200, 201 (Tex. Civ. App.–San
Antonio 1902, no writ). Either legal or equitable title will support a homestead claim. Id. Once
property has been dedicated as homestead, it can only lose the designation by abandonment,
alienation, or death. Wilcox, 103 S.W.3d at 472. After the party has established the homestead
character of the property, the burden shifts to the creditor to disprove the continued existence of the
homestead. Id.
            Fauber testified that his mother bought the house and he lived there for twenty years. When
his mother died, she left the house and property in trust for him. He was, therefore, the equitable
owner of the property. When he married Nicholas, she moved into the house. Except for the
occasional incarceration or out-of-town job, Fauber lived in the home continuously, without ever
attempting to establish a homestead elsewhere. In 1997, Fauber applied for a homestead exemption
with the Anderson County Appraisal District. Contrary to Gibson’s argument that the lack of an
exemption is evidence that the home is not Fauber’s homestead, the application for the exemption
is evidence of his intent to make it his homestead. A home can be a homestead without the tax
exemption. See Dickey v. McComb Dev. Co., 115 S.W.3d 42, 47 (Tex. App. - San Antonio 2003,
no pet.) (Stone, J., concurring). The record provides factually sufficient evidence to support the
jury’s finding that the property was Fauber’s homestead. See Beall, 867 S.W.2d at 795-96. We
overrule issue seven.
 
Actual Damages
            In his second issue, Gibson contends that Fauber cannot recover for the loss of furniture,
furnishings, and personal belongings because the pleadings and proof regarding this loss related to
a claim for conversion and he submitted no jury issue on conversion. The liability question
submitted to the jury asked if Gibson committed fraud against Fauber. Gibson asserts that a finding
of fraud cannot support the jury’s award of $18,341.00 for loss of personalty.
            In his petition, Fauber alleged that Gibson, Nicholas, and Prater “engaged in a course of
conduct the object of which was to wrongfully and unlawfully dispossess [Fauber] of the realty and
personalty.” Attached to Fauber’s petition is Exhibit B, a two-page list of personal property under
the heading “Conversion.” In his petition, he alleges that he was either the owner or had a greater
right to possession of the personal property listed in Exhibit B. The petition clearly differentiated
between the “realty” and the “personalty.” It alleged that Gibson obtained the realty through fraud
by having Fauber execute a deed without realizing that he was conveying the realty. The only facts
alleged concerning how Fauber lost control of the personalty concern the divorce procured by
Nicholas. Although Fauber and Nicholas had not lived together as husband and wife for some time,
they were legally married until August 14, 1998. In his petition, Fauber alleged that “Defendant
NICHOLAS on August 14, 1998, obtained a divorce decree awarding her as her separate property
all of the personalty.” 
            Fauber testified that almost everything in his house and on the property was removed while
he was in jail. He said that Gibson took his property but acknowledged that he had no actual
knowledge of what happened to the property because he was in jail at the time. There was also
testimony that the house had been broken into and vandalized and that some items had been stolen. 
Nicholas testified that the divorce decree awarded her all the personalty. She explained that she
asked for it to be awarded to her because it needed to be taken care of. Prater also testified that all
of Fauber’s personal property was given to Nicholas in the divorce decree. 
            Fauber responds to this issue by asserting that the jury’s findings of fraud and that the deeds
were intended to be a mortgage against his homestead authorize a recovery for actual damages. In
support of the second proposition he cites to Dallas Building & Loan Association v. Henry, 98
S.W.2d 1030 (Tex. Civ. App.–Fort Worth 1936, writ dism’d w.o.j.). While that case involved a
mortgage on a homestead, the actual damages awarded to the defendants in that case constituted
compensation for the plaintiff’s wrongful sequestration. Id. at 1034. Further, the “actual damages”
at issue here were not caused by the improper mortgage on Fauber’s homestead. The mortgage on
the homestead addresses only the realty, not the personalty on the property. The same is true for
Fauber’s fraud claim. His fraud claim revolves around the allegation that Gibson misrepresented the
effect of the deed. The deed conveyed the realty, not the personalty on the property.
            The liability questions submitted to the jury do not support an award for actual damages
incurred due to the removal of the personalty from Fauber’s home. Fauber failed to ask the jury
questions relating to his claim for conversion of the personalty. Therefore, Fauber waived any claim
for conversion. Southwestern Bell Tel. Co. v. Delanney, 809 S.W.2d 493, 495 (Tex. 1991). 
Because the $18,341.00 award for loss of personalty does not find support in the jury’s findings on
liability, we sustain issue two.
            In his first issue, Gibson attacks the jury’s response to Question 3b, in which it awarded
Fauber $5,333.00 for the loss of use and enjoyment of the real property. Gibson contends Fauber
did not include in his petition a request for damages for the loss of the use and enjoyment of the
realty and is therefore not entitled to this award.
            A trial court may not grant relief in the absence of pleadings supporting such relief. 
Holmstrom v. Lee, 26 S.W.3d 526, 532 (Tex. App.–Austin 2000, no pet.). A plaintiff must recover
upon the facts stated in his pleadings. White v. Texas Motor Car & Supply Co., 228 S.W. 138, 140
(Tex. 1921). Nowhere in Fauber’s live pleadings does he mention loss of use and enjoyment of the
realty or loss of rentals, evidence of which is the basis of the jury’s award. The facts are not pleaded
and there is no specific prayer for such relief. In the absence of a factual recitation providing Gibson
with notice, Fauber’s general prayer for relief does not entitle him to this award. See Holmstrom,
26 S.W.3d at 532-33. Therefore, it was error for the trial court to award Fauber $5,333.00 for loss
of use and enjoyment of the realty. To the extent issue one complains of the award for loss of use
and enjoyment of the real property, it is sustained.
 
Attorneys’ Fees
            In his sixth issue, Gibson contends the trial court erred in awarding Fauber attorneys’ fees
because Fauber is not entitled to attorneys’ fees for his claims against Gibson. He further argues
that, if Fauber is entitled to the award, the trial court erred in failing to condition the award of
appellate fees on the outcome of the appeal.
            There is no common law right to attorneys’ fees. The recovery of attorneys’ fees must be
authorized by statute or contract. Dallas Cent. Appraisal Dist. v. Seven Inv. Co., 835 S.W.2d 75,77
(Tex. 1992). Fauber responds by arguing that the award of attorneys’ fees is supported by two
alternative bases, either his declaratory judgment claim or his statutory fraud claim. Since no jury
issue or question was requested or presented on statutory fraud, and therefore no recovery was had
on this claim, attorneys’ fees are unsupportable under this claim. See Hill v. Heritage Res., Inc., 964
S.W.2d 89, 143 (Tex. App.–El Paso 1997, pet. denied). 
            A party proceeding under the Declaratory Judgment Act may recover his attorneys’ fees. 
Tex. Civ. Prac. & Rem. Code § 37.009 (Vernon 1997). There is no basis for declaratory relief
when a party is seeking in the same action a different, enforceable remedy, and a judicial declaration
would add nothing to what would be implicit or express in a final judgment for the enforceable
remedy. Strayhorn v. Raytheon E-Systems, Inc., 101 S.W.3d 558, 572 (Tex. App.–Austin 2003,
pet. denied). It is improper to award attorneys’ fees under the Declaratory Judgment Act when the
statute is relied upon solely as a vehicle to recover attorneys’ fees. Id.
            Fauber’s original petition was entitled “Original Petition for Declaratory Judgment” and
asked for a declaration that 1) Fauber has no obligation or liability under the deed, 2) Gibson is not
subject to any contract, deed, or transfer document, 3) the real property at issue is Fauber’s sole and
separate property, and 4) the deed is void. In his amended petition and trial supplement, pursuant
to his fraud claim, Fauber asked the trial court to cancel the three deeds, declare the deed signed by
Fauber a mortgage, and declare the realty to be Fauber’s homestead and the lien against it invalid. 
It is at least arguable that upon amending his petition, Fauber dropped any attempt to sue pursuant
to the Declaratory Judgment Act. Further, his request for declaratory relief is redundant because of
his suit for fraud. See id. Therefore, declaratory relief is improper and Fauber is not entitled to an
award of attorneys’ fees under the Declaratory Judgment Act. Id. We sustain Gibson’s sixth issue.
 
Conclusion
            The evidence is legally and factually sufficient to support the jury’s findings that Gibson
committed fraud against Fauber. The record presents clear and convincing evidence of fraud in
support of the award of exemplary damages. The evidence is factually sufficient to support the jury’s
finding that the property was Fauber’s homestead. The jury’s liability finding cannot support its
award for loss of personalty. Fauber’s pleadings do not support an award for loss of use and
enjoyment of the realty. The claim submitted to the jury is not one that entitles Fauber to attorneys’
fees. We need not address the remainder of Gibson’s complaints. See Tex. R. App. P. 47.1.
            We modify the trial court’s judgment to delete the award of $18,341.00 for loss of furniture,
furnishings, and personal belongings; the award of $5,333.00 for loss of use and enjoyment of real
property; and the award of $19,000.00 in attorneys’ fees.
            As modified, we affirm the trial court’s judgment.
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice



Opinion delivered September 8, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.






























(PUBLISH)