Bryan H. PUNDT et ux., Appellants,

v.

M. E. McNEILL, Appellee.

No. 778.

Court of Civil Appeals of Texas, Corpus Christi.

July 31, 1973.

Rehearing Denied Aug. 31, 1973.

Dyer, Redford, Burnett, Wray, Woolsey & Dunham, J. M. Burnett, Corpus Christi, for appellants.

Harry J. Schulz, Three Rivers, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit by plaintiff, M. E. McNeill, against Bryan H. Pundt and his wife, seeking damages for personal injuries received when Bryan Pundt allegedly shot the plaintiff while hunting. The defendants filed pleas of privilege seeking to have the case transferred to Bee County, the county of their residence. Plaintiff filed a controverting plea claiming the venue was properly set in Live Oak County, where the accident took place, based upon several exceptions to the venue statute. The trial court, sitting without a jury, overruled the defendants' pleas of privilege, whereupon they have perfected their appeal to this court.

On Christmas Day in 1967 the plaintiff and his son were deer hunting in Speck New's pasture in Live Oak County. The plaintiff and his son were hunting along a division fence between the New pasture and the adjoining Nichols pasture. They crossed over into the New pasture from the Nichols side, crawling through the division fence. At about 7:00 a. m., after they had walked about 150 yards from the division fence and while bent over lifting a small limb from his path, the plaintiff was

shot. The bullet entered his right side, touched his backbone and came out the left side. The plaintiff was facing west, so it was estimated that the bullet came from the north. He told his son to summon aid and to get his mother. Their home was about two and one-half miles from where the accident took place. The son left, screaming and yelling all the way. The plaintiff managed to crawl toward the division fence to an opening where he lay. About that time plaintiff heard a car start up, so he fired his rifle to attract attention. He fired eight to ten times until all of his shells were gone. The car did not stop but continued on.

The evidence showed that the defendant, Bryan H. Pundt, was hunting the same morning and was admittedly near the place where the accident took place at 6:45 a. m. The defendant told the sheriff during a later investigation that he saw a deer jump the division fence and that he fired one shot at the deer. He stated that he did not go and look to see if the deer was down or killed, but stated that he went back to the camphouse to let it die. The defendant stated that he did not hear any other shots. He admitted firing his shot into the New pasture where the plaintiff was hunting. He said that he did not hear the shots that the plaintiff fired to summon help.

Arlon Retzloff, a witness, was hunting with his brother in another pasture one-half to one mile away from the place where plaintiff was shot. He testified that he heard the shot that hit the plaintiff. Shortly thereafter he heard someone calling for help. The yelling he heard got closer and closer and then finally went farther and farther away until it faded out. Retzloff stated that after the first shot was fired he heard eight to ten other shots spaced apart. He realized that something went wrong. He and his brother left the deer stand and went over to the defendants' camphouse. They blew their car horn, attempting to summon aid, but nobody came to the door, although a car was parked outside.

About thirty minutes after the plaintiff had been shot, the plaintiff's son, a neighbor, and the plaintiff's wife found the plaintiff in the clearing and took him to the hospital. Shortly thereafter the sheriff in George West was notified of the accident. Sheriff Bob Reagan went to the plaintiff's house to find out where the shooting occurred. Two of the sheriff's deputies arrived at the scene approximately the same time the sheriff did. One of the deputies, Sam Huff, is now sheriff of Live Oak County.

The sheriff and the two deputies conducted an investigation of the shooting. They found the place where McNeill was shot, there being lots of blood at that location. They then followed the blood back toward the fence line to where the plaintiff laid down waiting for someone to rescue him. At that place they found eight to ten .270 hulls that the plaintiff had fired seeking help. The sheriff and his investigating team picked up the tracks of the plaintiff and his boy where they crossed the fence from the Nichols pasture to the New pasture and on out into the pasture to where McNeill was shot. At a place fairly close to where they crossed the division fence, they found an oak tree that was used as a deer stand. It had some boards nailed into it and a place to sit some seven to eight feet above the ground. While investigating, the sheriff picked up a third set of human tracks in the Nichols pasture. He followed these tracks through the division fence into the New pasture to the oak tree. The third set of tracks were the only other tracks found in the entire area and these were fresh tracks.

The sheriff testified that the shot that hit McNeill came from the oak tree. The plaintiff was walking in a westerly direction and the shot came from the north, entering on the plaintiff's right side and exiting on the left. The tree was north of the location where plaintiff was shot. Sam Huff, the present sheriff, but deputy sheriff at the time of the shooting, testified that he also found the third set of tracks

that led to the oak tree where the tracks stopped. He stated that evidently the man making the tracks climbed up in the tree. He testified that he also found that the same tracks went a part of the way to where McNeill was shot and then stopped. The tracks then went back through the fence and over into the Nichols pasture. The plaintiff was shot about 300 feet from the oak tree, and the tracks travelled to about 200 feet from where the plaintiff had been shot. The tracks then turned around and went back in the direction of the division fence.

Sheriff Huff testified that a man in the oak tree would have had a good view of the area and would have been able to determine the difference between a man and a deer from the distance at which McNeill had been shot. The brush in the pasture had been chained down and was not too thick nor too high.

While Sheriff Reagan and his two deputies were making the investigation, Mrs. Pundt and two children came up to the scene. She appeared rather nervous at the time. Mr. Pundt, the defendant, came up to the area about 9:00 a. m. He told the sheriff that he was looking for a deer that he had shot at. The sheriff noticed that he did not have his gun with him. Mr. Pundt admitted to the sheriff that he had shot his gun one time a little before 7:00 a. m. and heard no other shots. He stated that he thought that he had shot a deer but he did not go and look to see if it was a deer. He stated that he went back to the camphouse to let the deer lie down and die.

Later, Mr. and Mrs. Pundt went with the sheriff voluntarily to the courthouse in George West, and while at the courthouse, Mr. Pundt made a statement together with a sketch. While Mrs. Pundt was with the sheriff she also made a statement. Sheriff Reagan testified that she told him "She felt sure that her husband had shot this man, and she hoped he got along all right."

Mr. Pundt's statement and diagram were introduced into evidence. If such statement and diagram were to be believed, they indicated that Mr. Pundt was hunting near where the plaintiff was shot but at a location where it would be unlikely for the bullet to have hit the plaintiff. The particular location where Pundt said he shot at a deer was south of where the plaintiff was hit. Pundt argues here that because of his location it was impossible for his shot to have hit the plaintiff. Mr. Pundt testified that he shot from outside his car and across the division fence.

◾ In determining the sufficiency of the evidence to support a trial court's judgment, the appellate court should disregard all of the adverse evidence, indulging all reasonable inferences in favor of the successful party, giving credit to all such evidence that is favorable to the judgment of the trial court. Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91 (Comm.1935); Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97 (1953). Although there is no direct evidence linking the defendant, Mr. Pundt, to shooting the gun that hit the plaintiff, the circumstantial evidence is sufficient to support the trial court's judgment.

In addition to the testimony hereinabove set forth no one testified that there were two shots fired, one shot being the one that hit the plaintiff and the other shot being the one that defendant supposedly fired at a deer. There was no other hunter found in the area or unaccounted for in the area. The sheriff and the game warden went to the place that defendant said he had shot at the deer, but they were unable to find any deer tracks within the area pointed out by Mr. Pundt. The sheriff stated that the defendant's car was not at the place where he stated that it was, as the tracks that were there were most likely to have been made by the defendants at a later time. The appellee argues that it is unlikely and unusual for a deer hunter to shoot at a deer and to leave it to die without seeking it out. Appellee further argues that it is also unlikely for a hunter to start looking for a deer two hours later without bringing his gun along with

him. Neither Mr. nor Mrs. Pundt took the stand to testify.

Venue facts may be proved by circumstantial evidence, and are not required to be established by direct evidence. Parker v. Hechler, 473 S.W.2d 243 (Tex. Civ.App.—Houston 14th 1971); Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958). They may be proved by indirect or circumstantial evidence, provided that such circumstantial evidence is based on direct positive evidence. It has been stated that "as a general rule, in the absence of direct evidence on the point, evidence of any circumstance, however slight, is relevant and admissible if it tends in any degree to establish a material fact, or if it affords a fair presumption of inferences concerning the principal matter in dispute." 23 Tex.Jur.2d Evidence § 143. The trial court, of course, in determining the weight to be given the evidence it receives, may take into consideration the interests of the witnesses in the subject matter of the suit. The general rule is that the testimony of an interested witness does little more than raise a fact issue to be determined by the trier of fact. James T. Taylor & Son, Inc. v. Arlington Independent School District, 160 Tex. 617, 335 S.W.2d 371 (1960).

Subdivision 9a of Article 1995, Vernon's Ann.Tex.Civ.St., requires plaintiff to prove that the defendant committed an act or omission of negligence in the county of the suit and that such negligence was the proximate cause of the injury complained of. The circumstantial evidence in this case is sufficient for venue purposes to prove that defendant, Mr. Pundt, fired the shot that hit the plaintiff. A person using a deer rifle in the exercise of ordinary care must not only be sure that he is shooting at a deer, but he must first ascertain and be sure that no one is in his line of fire. Reasonable or ordinary care commensurate with the danger is required in the handling or use of firearms. A person who negligently uses a weapon is liable in damages for injuries to a person proxi-mately caused by his negligence. See 94 C.J.S. Weapons § 28.

After reviewing all of the evidence both direct and circumstantial and in the light most favorable to the plaintiff, we must conclude that there was evidence to support the judgment of the trial court that defendant, Bryan H. Pundt, was negligent and that such negligence was the proximate cause of plaintiff's injuries. Because of our holding herein it is not necessary that we consider the appellant's other points of error except insofar as they relate to the cause of action against Mrs. Pundt. We agree with appellant, Mrs. Bryan H. Pundt, that there is insufficient evidence that would sustain venue in Live Oak County as to her. Plaintiff's cause of action against Mrs. Bryan H. Pundt is hereby severed and the same is reversed and ordered transferred to Bee County, Texas. Plaintiff's judgment as to defendant, Bryan H. Pundt, is affirmed.

Affirmed in part and reversed and rendered in part.