Salvador **SANCHEZ**, Appellant,

v.

Ben L. **BRANDT**, Jr., Appellee.

No. 1275.

Court of Civil Appeals of Texas, Corpus Christi.

May 18, 1978.

Rehearing Denied June 8, 1978.

George P. Powell, Texas Rural Legal Aid, Inc., Edinburg, for appellant.

Cornelius B. Marsh, IV, McAllen, for appellee.

## OPINION

NYE, Chief Justice.

Salvador Sanchez, a purchaser of unimproved real estate, brought suit against the seller, Ben L. Brandt, Jr., seeking specific performance of an executory contract on the basis that the seller's notice of forfeiture had failed to comply with the notice requirements of Article 1301b and that the seller had therefore wrongfully refused the purchaser's timely tender of the outstanding indebtedness due under the contract. The defendant, seller, defended on the basis that Article 1301b was not applicable to the particular contract of sale in question. At trial, the parties entered into numerous

stipulations limiting the scope of the trial to one issue which was ultimately submitted to the jury and answered favorably to the plaintiff purchaser. After the jury's verdict was received and filed, the court granted defendant seller's motion for judgment notwithstanding the verdict. The purchaser perfected his appeal to this Court. We reverse.

In January of 1970, Salvador Sanchez entered into a contract for the purchase of approximately ten (10) acres of unimproved realty, located in Lot 44–10 in the west addition to Sharyland, Hidalgo County, Texas, from the owner, Mr. Ben L. Brandt, Jr. The purchase price was $5,000.00 payable in 120 equal monthly installments of $52.18, plus interest at the rate of 8% per year. An initial required down payment of $750.00 was paid. It was further agreed that the purchaser would pay all taxes and assessments commencing with the 1970 tax year. The contract provided that title to the property and title to any improvements erected thereon by the purchaser, would remain in the seller until the purchase price was paid in full. The contract finally provided that in the event purchaser defaulted in his payments or otherwise failed to comply with any of the terms and conditions of the contract, the seller would have the option to declare the contract at an end and retain all amounts previously paid by the purchaser. The contract provided that the only notice required to effectuate such a forfeiture was a letter written by the seller or his designated attorney addressed to the purchaser at a specified address.

The record indicates that at the time the contract was signed, Mr. Sanchez was working in Bartlett, Illinois, because he could not obtain comparable work in the Rio Grande Valley. As is the custom among many unskilled and semi-skilled workers in the Rio Grande Valley who seek seasonal work in the north, Mr. Sanchez saved his earnings and planned to move back to the Valley upon retirement. He then intended to build a small ranchhouse on the Sharyland acreage and supplement his retirement by raising a few animals and planting a garden.

On July 2, 1974, the seller, through his attorney, mailed a letter of forfeiture to Mr. Sanchez at his Illinois address.[1] At the time this letter was mailed, Mr. Sanchez had decided to retire and was travelling from Illinois to his home in Texas. He arrived July 5, 1974, and was informed shortly thereafter by relatives in Illinois that they had received the forfeiture letter and that they would forward it to Mr. Sanchez in Texas. Immediately thereafter Mr. Sanchez tendered the full balance then owed on the contract. The money was refused by Brandt. Sanchez then instituted this suit.

The parties made numerous stipulations at trial. The essence of the relevant stipulations are that: 1) as of June 1974, a total of 53 monthly payments should have been made; 2) in June 1974, Sanchez tendered payments number 47 and 48 which were refused by the seller; 3) Sanchez would have been only four payments behind had the seller accepted the two tendered payments in June 1974; 4) some of the tax payments due on the property had been paid by Sanchez after they became delinquent but prior to the time he received notification of forfeiture; 5) some of the tax payments were not made until after Sanchez received notification of forfeiture; 6) Sanchez had been unaware of the tax liabilities for the period 1970–1974 because he had not personally received tax statements; and 7) the seller's forfeiture letter did not comply with the notice provisions of

---

1. The letter stated in relevant part as follows: "Please be advised that I have been employed by Mr. Ben L. Brandt, Jr. to inform you of the fact that Mr. Brandt has declared the above referenced contract null and void and fully at an end and has forfeited all amounts of money heretofore paid by you on said contract as liquidated damages and has taken possession of the premises described therein as provided in paragraph VII of said contract.

Mr. Brandt has exercised this option because of your failure to make the installments as provided for in the contract and to pay the taxes on said property. He is herewith enclosing your checks numbered 117 and 118 in the respective amounts of $52.18 each."

Article 1301b. In addition, it is undisputed that Sanchez tendered the balance due under the contract immediately upon receipt of the forfeiture letter, and that he remains able and willing to pay at this time.

In response to the sole special issue submitted, the jury found that at the time Sanchez executed the contract, he intended to use the property for the purpose of establishing a residence. The trial court, granted defendant's motion for judgment notwithstanding the verdict on the basis that: 1) there was no evidence to support the jury's answer to this special issue; and 2) the notice requirements of Article 1301b do not apply to executory contracts for the sale of unimproved realty.

On appeal, Sanchez first contends that the trial court erred in ruling that there was no evidence to warrant the submission of the special issue to the jury. In considering a no evidence point it is the duty of this Court to view the evidence in its most favorable light, considering only the evidence and reasonable inferences drawn therefrom in support of the jury's answer and to disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965); *Transport Insurance Company v. Mabra*, 487 S.W.2d 704 (Tex.Sup. 1972).

Sanchez testified that from the inception of the contract, he intended to build a small ranchhouse on the property in question and reside there with his family. Sanchez visited the land every time he came to Texas. He was acquainted with the neighbors who were residing within one-half mile of the location of the land in question. Sanchez testified at great length concerning how he planned to develop the property and what improvements he intended to make. The testimony of an interested party, although not generally conclusive, has probative force and is sufficient to raise a jury question. *Owen Development Company v. Calvert*, 157 Tex. 212, 302 S.W.2d 640 (1957); *Pundt v. McNeill*, 500 S.W.2d 559 (Tex.Civ.App.—Corpus Christi 1973, no writ); *Prince v. North State Bank of Amarillo*, 484 S.W. 2d 405 (Tex.Civ.App.—Amar-

illo, 1972, writ ref'd n. r. e.); *Clark v. Brewer*, 471 S.W.2d 639 (Tex.Civ.App.—Corpus Christi 1971, no writ). Appellant's point of error one is sustained.

This brings us to the next question of whether the Legislature intended to limit the applicability of Article 1301b to only improved realty. Article 1301b provides as follows:

"Section 1. A forfeiture of the interest and the acceleration of the indebtedness of a purchaser in default under an executory contract for conveyance of real property used *or to be used as the purchaser's residence* may be enforced only after notice of seller's intentions to enforce the forfeiture and acceleration has been given to the purchaser and only after the expiration of the periods provided below:

\*     \*     \*     \*     \*     \*

(e) Such notice shall be conspicuously set out; and shall be printed in 10 point bold face type or upper case typewritten letters; and shall include the following:
NOTICE
YOU ARE LATE IN MAKING YOUR PAYMENT UNDER THE CONTRACT TO BUY YOUR HOME. UNLESS YOU MAKE THE PAYMENT BY (date) THE SELLER HAS THE RIGHT TO TAKE POSSESSION OF YOUR HOME AND TO KEEP ALL PAYMENTS YOU HAVE MADE TO DATE.

Sec. 2. A purchaser in default under an executory contract for the conveyance of real property used or *to be used* as the purchaser's residence, may at any time prior to expiration of the period provided for in Section 1, avoid the forfeiture of his interest and the acceleration of his indebtedness by complying with the terms of the contract up to the date of compliance notwithstanding any agreement to the contrary." (emphasis supplied)

The seller's contention, in which the trial court agreed, is that the Legislature intended Article 1301b to apply to only executory

contracts for the sale of improved property. Sanchez, on the other hand, argues that the statute covers any property which the purchaser has an intention to use as a residence, present or future, irrespective of whether or not there is an existing dwelling at the time the contract is executed. In support of his contention that the statute does not apply to unimproved property, the seller argues that the notice provision in which the Legislature used the word "home" shows that the statute was intended to cover only real estate on which there is a presently existing dwelling suitable for habitation or a dwelling in the process of construction.

■ In addressing these contentions, we shall keep in mind the familiar rules of statutory construction. The fundamental and dominant rule controlling the construction of a statute is to ascertain and effectuate the intention of the Legislature. *Calvert v. Texas Pipe Line Company*, 517 S.W.2d 777, 780 (Tex.Sup.1975); Art. 10 § 6, Tex.Civ.Rev.Stat.Ann. (1969). The intention of the Legislature should not be determined or derived from isolated portions of the Act, but may be decided upon by looking not only to the body of the Act and its caption but also to the emergency clause. *Calvert v. Texas Pipe Line Company*, supra at 781; *City of Mason v. West Texas Utilities Co.*, 150 Tex. 18, 237 S.W.2d 273 (1951); *Maddox v. Flato*, 423 S.W.2d 371, 375 (Tex. Civ.App.—Corpus Christi 1968, writ ref'd n. r. e.).

■ At the outset, we note the familiar rule of law that forfeitures in conjunction with contracts for the sale of real property are looked upon with disfavor by our courts. See e. g., *Hill v. Still*, 19 Tex. 76 (1857); 59 Tex.Jur.2d § 553 (1964) and cases cited therein. Where the purpose of a statute is to prevent forfeiture, it will be liberally construed to accomplish that purpose. *Lovett v. Simmons*, 29 S.W.2d 1021, 1022 (Tex. Com.App.1930, jdgmt adopted); 53 Tex. Jur.2d § 200 (1964). Article 1301b is a remedial statute. The general purpose of this article is to provide fair and equitable procedures which the seller must follow pri-

or to enforcing forfeiture because of default of a purchaser under an executory contract for the sale of real property *used or to be used for the purchaser's residence*. *Pratt v. Story*, 530 S.W.2d 325 (Tex.Civ. App.—Tyler 1975, no writ). (Emphasis added). Section 2 of this article specifically allows a defaulting purchaser to prevent forfeiture by complying with the terms of the contract prior to the expiration of the applicable notice period.

■ The general language of the statute is broad. By its express terms the article encompasses real property which is presently being used as the purchaser's residence as well as real property which will be so used in the future. The statute in question does not expressly limit its applicability to improved real property, nor does it define residence or any other term contained therein. Where the meaning of particular words contained in the statute are not defined by the Legislature, we must follow the rules of statutory construction which requires us to give the words in such statute their common and ordinary meaning. *Satterfield v. Satterfield*, 448 S.W.2d 456 (Tex.Sup.1969); *Clements v. City of Corpus Christi*, 471 S.W.2d 83, 86 (Tex.Civ.App.— Corpus Christi 1971, writ ref'd n. r. e.).

The term "real property", as it is commonly understood, includes land, and generally whatever is erected upon or affixed to land. Black's Law Dictionary. "Residence" generally means "the factual place of abode" or the "place in which a person . . . resides". Black's Law Dictionary; Webster's New World Dictionary (2d College Ed. 1974). The language of the statute, addresses itself then, to real property, which is used or which will be used, as a place to live. All of the language, in the body of the statute, other than the notice provision, excludes any reference to a present "home", "house" or "dwelling place". The type of notice suggested to be used in the statute, does not follow the broad language of the statute itself. For instance, the requirements of the statute would be met if a purchaser actually used the unimproved real property as his resi-

dence with a travel trailer or mobile home without the benefit of a conventional permanent structure or house.

 The seller principally relies upon the term "home" found in the notice provision to support his contention that Art. 1301b applies only to improved real property. The common meaning of the term "home" means "the place where a person (or family) lives; one's dwelling place". Although "home" can refer to a specific dwelling structure, "the *place* where one lives" is not necessarily that narrow. In any event, the seller's argument is not persuasive. The notice provision considered above, is an isolated portion of the statute. This provision, unlike the remainder of the statute, addresses itself solely to the present tense as though the purchaser already lived on the property. The statute in its entirety clearly encompasses executory contracts of sale of real property which the purchaser may use as a residence in the future. The statute requires written notice whenever the purchaser has made any payment if the property is used or to be used as the purchaser's residence.

It is a matter of common knowledge, of which we can take judicial notice, that many poor people are unable to obtain conventional financing when they wish to purchase residential property. Frequently it is necessary for them to pay out the entire purchase price of a tract of land prior to procuring title and prior to securing a mortgage on the property with a lending agency in order to finance any improvements. These facts were presumptively within the contemplation of the Legislature when the statute in question was enacted. See 53 Tex.Jur.2d § 183 (1964) and authorities cited therein. If we were to construe the statute as narrowly as the seller suggests, we would frustrate the legislative intent as evidenced throughout the remainder of the statute. This we cannot do. Any apparent conflict between the notice provision and the remainder of the statute must be resolved in favor of effectuating the legislative intent expressed in the remainder.

The only harm, if any, in applying Article 1301b to the facts and circumstances of this case is to require the seller to give to the purchaser the statutory notice. If a purchaser fails to pay the outstanding balance prior to the expiration of the applicable notice, the seller is entitled to enforce forfeiture and take possession of the property. On the other hand, if the purchaser pays the outstanding balance within the time prescribed, the seller will still get the benefit of his bargain. We hold that Article 1301b is applicable to the facts in this case. The trial court therefore erroneously granted defendant's motion for judgment notwithstanding the verdict.

The judgment of the trial court is reversed and judgment here rendered in favor of the purchaser.

REVERSED AND RENDERED.