**Franklin MARKER, III, Appellant,**

v.

**Adolfo GARCIA and Lidia Garcia, Appellees.**

**No. 04–04–00708–CV.**

Court of Appeals of Texas, San Antonio.

Nov. 2, 2005.

 

claim alleging a violation of section 5.077 of the Code and awarding attorneys' fees, and remand the cause for further proceedings consistent with this opinion.

Martin W. Seidler, Law Office of Martin W. Seidler, San Antonio, for appellant.

John C. Chunn, John C. Chunn, P.C., New Braunfels, Melodee L. Gruber, Melodee L. Gruber, P.C., Hondo, for appellees.

Sitting: CATHERINE STONE, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

Adolfo Garcia and Lidia Garcia sued Franklin Marker, III, for various claims arising out of a transaction involving a contract for deed. The trial court granted summary judgment in favor of Marker with regard to the merits of the Garcias' claims and then entered a final summary judgment after awarding Marker attorneys' fees.[1] The Garcias challenge the summary judgment on appeal asserting: (1) summary judgment was improperly granted in favor of Marker as to the Garcias' claims alleging a violation of section 5.077 of the Texas Property Code and a breach of warranty; and (2) no statutory basis supported the attorneys' fees awarded or, in the alternative, Marker failed to segregate the recoverable fees. We affirm the portion of the trial court's judgment dismissing the Garcias' breach of warranty claim, reverse the portions of the trial court's judgment dismissing the Garcias'

### BACKGROUND

On October 18, 1999, the Garcias entered into an Unimproved Property Contract to purchase a 2.84 acre tract of land located in the City of Hondo, Medina County, Texas (the "Property") from Richard and Suzanna Muennink for $16,000.00. The Garcias were required to secure third party financing in the amount of $12,600.00 under the terms of the contract. When the Garcias were unable to secure financing, an agent with the listing real estate broker told the Garcias he would seek to arrange financing. Marker, who had occasionally financed transactions in the past to assist others, subsequently agreed to provide the financing.

On January 14, 2000, Marker acquired the Property from the Muenninks by General Warranty Deed. The deed contained the following clause:

> **Exceptions to Conveyance and Warranty:** Those matters shown on *Exhibit "B"* attached hereto and incorporated herein, to the extent, if any, that they are valid and subsisting against the Property or any part thereof.

Exhibit "B" included the following: "10' of a 40' road easement along the North property line as recorded in Volume 207, Page 355, Deed Records of Medina County, Texas."

On January 17, 2000, Marker and the Garcias entered into a Contract for Deed. The Contract for Deed listed the sales price as $16,000, with a $4,500 down pay-

1. The trial court severed Marker's claim seeking a declaratory judgment regarding the constitutionality of section 5.077 of the Texas Property Code into a separate cause number because several other pending cases raised the same challenge.

ment. The Contract for Deed contained the following clause:

### Reservations from and Exceptions to Conveyance and Warranty:

Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property.

The parties' affidavits are conflicting with regard to whether the Garcias received an amortization schedule detailing the payout information for the $11,500 balance at the time the Contract for Deed was closed. The Garcias deny receiving the schedule; however, Marker and Thomas J. Rothe, the attorney who prepared the documents for closing, stated that such a schedule was provided to the Garcias. Marker's copy of the amortization schedule that he used to track the Garcias' payments through February 13, 2002 was introduced into evidence. The first payment was timely paid for February of 2000. The payments for December of 2000 through August of 2001 were noted as being late. On February 13, 2002, Marker sent the Garcias a notice to cure default, stating no payment had been made since September of 2001. Marker stated that a few days after the notice was sent, Mr. Garcia met with him in person to discuss the matter. Marker stated that he provided Mr. Garcia with a copy of the amortization schedule containing Marker's payment entries. Marker allowed the Garcias to cure the default and complete the payments.

On January 7, 2004, Marker executed a General Warranty Deed in favor of the Garcias and issued a refund check to them for a slight overpayment. The General Warranty Deed contained the following clause:

### Reservations from and Exceptions to Conveyance and Warranty:

Easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded instruments, other than liens and conveyances, that affect the property; taxes for the current year, the payment of which Grantee assumes.

On November 13, 2003, prior to Marker's execution of the deed, the Garcias filed the underlying lawsuit against Marker asserting various claims. Both sides moved for summary judgment with regard to the merits of the claims, and the trial court granted summary judgment in favor of Marker. Marker later moved for summary judgment on his claim for attorneys' fees, and the trial court entered a final summary judgment in favor of Marker, awarding him attorneys' fees.

The Garcias timely filed their notice of appeal. The Garcias challenge the summary judgment on appeal only with regard to their claims for violation of section 5.077 of the Texas Property Code, breach of warranty with regard to access, and attorneys' fees.[2]

### SECTION 5.077

Section 5.077 of the Texas Property Code requires the seller under a contract for deed to provide the purchaser with an annual accounting statement containing: (1) the amount paid; (2) the amount owed; (3) the number of payments remaining; (4) the amount paid to taxing authorities on the purchaser's behalf if collected by the seller; (5) the amounts paid to insure the property on the purchaser's behalf if collected by the seller; (6) if the property has

---

2. The Garcias also had filed a breach of warranty claim relating to water availability in the underlying lawsuit. Although Marker's brief addresses this claim, the Garcias do not challenge the summary judgment as to this claim in their brief. Accordingly, we need not address the propriety of the summary judgment as to this claim on appeal.

been damaged and the seller has received insurance proceeds, an accounting of the proceeds applied to the property; and (7) if the seller has changed insurance coverage, a legible copy of the current policy or binder. TEX. PROP.CODE ANN. § 5.077(a) (Vernon 2004). Under the terms of the Contract for Deed, the Garcias were responsible for taxes and insurance, so the only information Marker would have been required to provide was the amount paid, amount owed, and number of payments remaining. A seller who fails to provide the annual statement is liable to the purchaser for "liquidated damages in the amount of $250 a day for each day after January 31 that the seller fails to provide the purchaser with the statement" and "reasonable attorneys' fees." TEX. PROP. CODE ANN. § 5.077(c) (Vernon 2004). In their motion for summary judgment, the Garcias calculated the amount of the liquidated damages to the date of their motion as totaling $584,000.00.

## A. Used or to Be Used as Residence

Section 5.077 applies to a transaction involving an executory contract for conveyance of real property only if the property is "used or to be used" as the purchaser's residence or as the residence of a person related to the purchaser within the second degree of consanguinity or affinity. TEX. PROP.CODE ANN. § 5.062(a) (Vernon 2004). Marker asserts that the Garcias were not entitled to recover the liquidated damages because the Property was not used or to be used as the Garcias' residence.

Although this court addressed the nature of the evidence necessary to show that property is used or to be used as a residence in *Dickey v. McComb Development Co.*, 115 S.W.3d 42 (Tex.App.-San Antonio 2003, no pet.), the issue in that case arose in the context of the sufficiency of the evidence to support a finding after a bench trial. In *Dickey,* this court noted that the testimony showed that the Dickeys made improvements to and lived on the land in their mobile home from 1992 to approximately 1998. 115 S.W.3d at 45. In 1998, the Dickeys moved off the land because deed restrictions prevented their daughter's continued participation in raising and showing animals. After the Dickeys' attempt to sell the land failed, they leased the land. *Id.* Other testimony established that the Dickeys had a residence elsewhere. *Id.* Rose Ann Dickey testified that they intended to move back onto the property within five years when their daughter graduated from high school; however, she was unable to commit to that date because she could not predict the future. *Id.* The Dickeys did not produce any evidence of definite plans or preparations to return to the property in question. *Id.* This court held, "Viewed in the light most favorable to McComb, a trier of fact could reasonably infer from the record that the property was not going to be used as a residence by the Dickeys." *Id.*

In this case, the Garcias' affidavits state their intent to use the property as their residence within three years. Although no evidence was presented of any actions taken to further this intent other than the construction of a fence, the Garcias had finished paying for the land only four months before the hearing on the motions for summary judgment.

█ The statutory phrase "used or to be used" is broad language. *Sanchez v. Brandt,* 567 S.W.2d 254, 258 (Tex.Civ. App.-Corpus Christi 1978, writ ref'd n.r.e.). "By its express terms, the [language] encompasses real property which is presently being used as the purchaser's residence as well as real property which will be so used in the future." *Id.* Thus, the language "clearly encompasses executory contracts [for the] sale of real property which the

purchaser may use as a residence in the future." *Id.* In *Sanchez*, the court explained the reason the Legislature may have chosen such broad language:

> It is a matter of common knowledge, of which we can take judicial notice, that many poor people are unable to obtain conventional financing when they wish to purchase residential property. Frequently it is necessary for them to pay out the entire purchase price of the land prior to procuring title and prior to securing a mortgage on the property with a lending agency in order to finance any improvements.

*Id.* at 259. Although the court in *Sanchez* addressed a different statutory provision, the court's analysis of the reason the Legislature likely chose the broad phrase "use or to be used" also is applicable in the context of section 5.077.

In considering the reason the Legislature may have chosen to broadly apply the statutory provisions relating to contracts for deed to property "used or to be used" as the purchaser's residence, we also must consider the intended purpose for the legislation. In adopting the legislation, the Legislature found the following:

> (1) the proliferation of colonias and substandard housing developments that lack adequate infrastructure creates serious and unacceptable health risks for the residents in these areas;
>
> (2) many residents building homes in these areas do not have access to traditional financing and the assistance of a professional builder, which promotes expansion of substandard housing;
>
> (3) the contract-for-deed arrangement allows low-income persons to purchase property and build homes on the property;
>
> (4) statutory law in this state does not ensure [an adequate flow of information and protection for the purchaser]; and

> (5) a purchaser under a contract-for-deed arrangement is faced with significant problems requiring statutory protection because of:
>
> > (A) the inadequacy of infrastructure in the areas where this arrangement is commonly used; and
> >
> > (B) the unregulated status of the contract-for-deed arrangement.

Act of May 27, 1995, 74th Leg., R.S., ch. 994, § 1, 1995 Tex. Gen. Laws 4982. One commentator described the problem leading to the enactment of the legislation as follows:

> Las Lomas is one of more than 1,000 colonias located along the Texas–Mexico border. Many of these communities were established decades ago by developers who bought undesirable land, divided it into subdivisions and sold the lots to low-income families. Over the years, developers invested little or no money in infrastructure such as sewage, water, and roads, leaving thousands of families living without such basic necessities as running water or paved roads.
>
> Rather than selling the lots through banks or other traditional financial institutions, the developers issued contracts for deed, high interest notes that are often virtually impossible to pay off. Families would pay for years only to find that they had been paying only interest and had made no headway on the principal of the loan. Because contracts for deed are set up as a kind of rent-to-own arrangement, a family that missed one payment could lose the property, including any improvements that had been made.

Pamela Brown, *Lawyers Team Up to Help in Colonia*, 63 Tex. B.J. 462, 462 (2000); *see also Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 434–35, No. 04–1002, 2005 WL 2397521, at * 6–7 (Tex. Sept. 30,

2005) (Wainwright, J., concurring) (describing problem leading to legislation).

Taking the intended purpose for the legislation into consideration, the Legislature initially limited the applicability of the statute to counties determined to be within 200 miles of an international border and to have a per capita income that averaged 25 percent below the state average. Act of May 27, 1995, 74th Leg., R.S., ch. 994, § 3, 1995 Tex. Gen. Laws 4983–84; *Flores,* at 429, 2005 WL 2397521, at * 2 n. 1. The provision limiting the statute's applicability to specific counties was removed in 2001 when the Legislature adopted several amendments to the statutory provisions relating to executory contracts for deed. *See* Act of May 18, 2001, 77th Leg., R.S., ch. 693, § 1, 2001 Tex. Gen. Laws 1319. The 2001 amendments also eliminated a provision that formerly required the purchaser to notify the seller of its failure to provide the annual statement required under section 5.077, replacing it with the current strict liquidated damages provision for failure to provide the statement. *Compare* Act of May 27, 1995, 74th Leg., R.S., ch. 994, § 3, 1995 Tex. Gen. Laws 4987 *with* Act of May 18, 2001, 77th Leg., R.S., ch. 693, § 1, 2001 Tex. Gen. Laws 1326. Although the removal of this notice provision might be beneficial in addressing the problem that gave rise to the legislation since the purchasers in those situations would be unaware of the need to provide notice to the seller, the removal of the required notice works a disservice under the facts and circumstances presented in this case. For this reason, section 5.077 must either be written or interpreted to ensure that "the punishment [fits] the crime." *Flores,* at 435–36, 2005 WL 2397521, at * 7 (Wainwright, J., concurring) (noting constitutional limits applicable to punitive damages including civil penalties); *see also Flores,* at 438–39, 2005 WL 2397521, at * 9–11 (Brister, J, dissenting) (asserting that Chapter 41 of the Texas Civil Practice and Remedies Code applies to recovery of liquidated damages under section 5.077 requiring either proof of more than nominal actual damages or, for causes of action accruing prior to September 1, 2003, proof of clear-and-convincing evidence of malice).

■ Having reviewed the legislative intent, we are convinced that this case does not present the type of situation that the Legislature intended to remedy in adopting the statutory provisions relating to executory contracts for deed, including the strict liquidated damages provision contained in section 5.077. Furthermore, given the circumstances presented, we acknowledge that the Garcias' simple statements of intent may be too weak to convince a jury that they intended to use the property as a residence even under the forward-looking "to be used" standard adopted by the Legislature. In the summary judgment context, however, we are required to consider the evidence in the light most favorable to the non-movant, *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 549 (Tex.1985), and we are required to consider the affidavits of interested witnesses as evidence.[3] *See Casso v. Brand,* 776 S.W.2d 551, 558 (Tex. 1989). Accordingly, constrained by the applicable standard of review, we must conclude that a genuine issue of material fact has been raised about whether the

---

**3.** We note that the credibility of the Garcias is likely to be a dispositive factor in the resolution of the case; therefore, the affidavits would not support a summary judgment in favor of the Garcias because the affidavits would not conclusively establish that the property was to be used as the Garcias' residence. *See Casso,* 776 S.W.2d at 558. In any event, the Garcias do not complain on appeal that their motion for summary judgment should have been granted.

property was "to be used" as the Garcias' residence. *Cf. Malnar v. Mechell,* 91 S.W.3d 924, 929 (Tex.App.-Amarillo 2002, no pet.) (relying on purchaser's statement to sellers that she was going to move back in and actions in moving back in to find a material fact issue as to whether realty was used or to be used as a residence); *Kirk v. Barnett,* 566 S.W.2d 122, 123 (Tex.Civ.App.-Houston [14th Dist.] 1978, no writ) (relying on evidence that purchaser intended to return and use the property as her residence if the forfeiture were avoided as evidence that property was used or to be used as the purchaser's residence).

### B. Actual Harm/Substantial Compliance

■ Marker next asserts that the Garcias are not entitled to recover the liquidated damages because they cannot show actual harm and because Marker substantially complied with section 5.077 by providing the Garcias with copies of the amortization schedules at closing and at the meeting after the Garcias received the notice of default. Marker relies on a federal district court decision in which the seller sent an annual account summary that included the amount of tax paid, the amount of interest paid to date, and the amount of principal and interest paid that year; however, the summary did not include the amount owed or paid to date. *See Flores v. Millennium Interests, Ltd.,* 273 F.Supp.2d 899, 901 (S.D.Tex.2003). The court noted that the information that was not provided could have been calculated from the figures provided. *Id.* The district court held that a seller who sends no statement at all violates the statute and is liable; however, the court noted that the seller's statements, while deficient, were not so deficient that they constituted no statements at all. *Id.* The court reasoned, "To claim damages for an incomplete statement, the purchaser must show an actual injury resulting from the omission." *Id.*

The case was appealed to the Fifth Circuit, which certified the following questions to the Texas Supreme Court:

1. If a seller under a contract for deed sends a purchaser a statement under § 5.077(a) that omits any of the applicable information listed in § 5.077(b) of the Texas Property Code, specifically the information required by § 5.077(b)(1) or (3), or both, is the seller liable to the purchaser for $250 per day liquidated damages as set forth in § 5.077(c)?

2. If a seller under a contract for deed sends a purchaser a statement that omits certain information required by §§ 5.077(b)(1) and (3), must the purchaser prove actual harm or injury to recover liquidated damages under the statute?

3. In 2001, 2002, and 2003, did the statutorily defined "exemplary damages" in chapter 41 of the Texas Civil Practice and Remedies Code encompass the statutorily defined "liquidated damages" in § 5.077 of the Texas Property Code, so that to recover under § 5.077 of the Property Code, a purchaser would have to comply with § 41.003 of the Civil Practice and Remedies Code?

*Flores v. Millennium Interests, Ltd.,* 390 F.Supp.3d 374, 376–77 (5th Cir.2004).

The Texas Supreme Court recently issued its opinion in response to the certified questions. *Flores,* 185 S.W.3d 427, 2005 WL 2397521. The court concluded that "an annual statement under Section 5.077 that omits some required information does not invoke the 'liquidated damages' provision unless the statements is so deficient as to be something other than a good faith attempt by the seller to inform the pur-

chaser of the current status of their contractual relationship." *Flores*, at 433, 2005 WL 2397521, at * 6. The court also held that a purchaser is not required to prove actual harm or injury to recover the liquidated damages. *Id.* Finally, the court declined to decide whether the liquidated damages constituted "exemplary damages" within the meaning of Chapter 41 of the Texas Civil Practice and Remedies Code. *Id.*

Since the Garcias are not required to show actual harm, the amortization schedules in question would provide Marker with a defense only if they were considered to be "annual statements" containing "a good faith attempt" by Marker to inform the Garcias of "the current status of their contractual relationship." *Id.* In the context of this appeal, however, whether the amortization schedules meet that standard is not ripe for our consideration because the Garcias' affidavits raise a question of fact as to whether they ever received the amortization schedules. Accordingly, we cannot affirm the summary judgment on this ground.

### BREACH OF WARRANTY

The Garcias admitted in their depositions that they never met Marker until after they defaulted on their payments under the Contract for Deed. Accordingly, any warranty regarding access must arise from the terms of the Contract for Deed or General Warranty Deed.

When interpreting a deed, just as when interpreting a contract, the intent of the parties is to be determined from the express language found within the four corners of the document. *Luckel v. White,* 819 S.W.2d 459, 461–63 (Tex.1991); *Walker v. Foss,* 930 S.W.2d 701, 704 (Tex.App.-San Antonio 1996, no writ). Construction of an unambiguous deed is a question of law to be resolved by the court. *Luckel,*

819 S.W.2d at 461; *Walker,* 930 S.W.2d at 704. All parts of the deed are to be harmonized, construing the instrument to give effect to all of its provisions. *Luckel,* 819 S.W.2d at 462; *Walker,* 930 S.W.2d at 704.

In this case, both the Contract for Deed and the General Warranty Deed except all easements, whether of record or not, from any warranty. Accordingly, the language unambiguously excludes any easements from Marker's warranty regarding title. *See, e.g., McDaniel v. Calvert,* 875 S.W.2d 482, 484–85 (Tex.App.-Fort Worth 1994, no writ) (noting reference to easement explained or limited the warranty in the conveyance); *Stewart Title Guar. Co. v. Cheatham,* 764 S.W.2d 315, 319 (Tex.App.-Texarkana 1988, writ denied) (noting reference to easement in title policy excluded easements from warranty); *Stroud v. Hunt Oil Co.,* 147 S.W.2d 564, 569 (Tex. Civ.App.-Eastland 1941, no writ) (exception of highway was intended to protect against warranty claim).

Accordingly, the Contract and the Deed contain an exception to the warranty with regard to easements, and the trial court properly granted summary judgment as to the Garcias' breach of warranty claim.

### ATTORNEYS' FEES

■ In their final issue, the Garcias complain about the $22,445.00 in attorneys' fees awarded in favor of Marker. A prevailing party cannot recover attorney's fees from an opposing party unless permitted by statute or by contract between the parties. *Holland v. Wal–Mart Stores, Inc.,* 1 S.W.3d 91, 95 (Tex.1999). Marker relies on section 5.077 of the Property Code, section 38.001 of the Texas Civil Practice and Remedies Code, and section 17.50(c) of the DTPA to support the attorneys' fee award.

Section 5.077(c) of the Texas Property Code permits recovery of attorneys' fees only by the purchaser from the seller. *See* TEX. PROP.CODE ANN. § 5.077(c) (Vernon 2004). Since Marker was the seller under the contract for deed, section 5.077 does not permit the recovery of attorneys' fees from the Garcias.

A defendant who only defends against a contract claim and presents no contract claim of his own is not entitled to recover attorneys' fees under section 38.001 of the Texas Civil Practice and Remedies Code. *See American Airlines, Inc. v. Swest, Inc.*, 707 S.W.2d 545, 547 (Tex.1986); *Smith v. Texas Farmers Ins. Co.*, 82 S.W.3d 580, 588 (Tex.App.-San Antonio 2002, pet. denied). Since Marker did not assert a contract claim of his own, he is not entitled to attorneys' fees under section 38.001.

Section 17.50(c) of the DTPA permits the recovery of attorneys' fees "[o]n a finding by the court that an action under this section was groundless in fact or in law or brought in bad faith, or brought for the purpose of harassment." TEX. BUS. & COM.CODE ANN. § 17.50(c) (Vernon 2002). Generally, findings on disputed facts are inappropriate in a summary judgment context because there must be no genuine issue of material fact before a summary judgment is even proper. *KT Bolt Mfg. Co. v. Texas Elec. Coop., Inc.*, 837 S.W.2d 273, 274 (Tex.App.-Beaumont 1992, writ denied). A trial court must, however, make the requisite finding under section 17.50(c) in order for a defendant to recover attorneys' fees even in the summary judgment context. *See Jones v. Smith*, 649 S.W.2d 29, 29–30 (Tex.1983); *Gonzalez v. Temple Inland Mortgage Corp.*, No. 04–03–00236–CV, 2004 WL 946550, at *4 (Tex.

App.-San Antonio May 5, 2004, no pet.); *Gonzales v. American Title Co. of Houston*, 104 S.W.3d 588, 599 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). In this case, the trial court did not make a finding that the action was groundless or brought in bad faith or for the purpose of harassment.[4]

Because none of the statutory provisions relied upon by Marker supports the award of attorneys' fees, the trial court erred in awarding attorneys' fees in his favor.

### CONCLUSION

Constrained by the applicable standard of review, we reverse the portions of the trial court's judgment dismissing the Garcias' claim alleging a violation of section 5.077 of the Texas Property Code and awarding attorneys' fees. We affirm the portion of the trial court's judgment dismissing the Garcias' breach of warranty claim. The cause is remanded to the trial court for further proceedings consistent with this opinion.

---

4. We express no opinion as to whether Marker could obtain a finding to support the recovery of attorneys' fees under section 17.50(c) on the remand of this cause.