# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00348-CV

**Barbara Ann Doughty, Appellant**

**v.**

**Stephen William Doughty, Appellee**

FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
NO. 181,547-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Barbara Ann Doughty, now Barbara Ann Leininger,[1] appeals from the trial court's final decree of divorce. She complains that the court erred in awarding appellee Stephen William Doughty a disproportionate share of the community estate and in the standards it used to value the equity the parties owned in certain property. We affirm the trial court's decree of divorce.

The parties married in 1984 and had a son, J.J. In 1991, the parties bought and lived in a house on ten acres under a contract for deed with the Texas Veteran Land Board. In June 2000, Leininger took J.J., then almost sixteen years old, and moved out of state. After Leininger filed for

---

[1] The notice of appeal was filed by appellant as Barbara Ann Doughty, the name under which she filed suit. In the divorce decree, the trial court ordered appellant's last name changed to Leininger. For clarity, we will refer to appellant as Leininger and to appellee as Doughty.

divorce in July 2000, Doughty filed a proposed division of the community estate, in which he stated that the parties owed about $15,000 on the real property, which he said was worth an estimated $75,917; he asked to have the real property awarded to him in the divorce. In her proposal, Leininger valued the real property at $135,000 and asked that it be divided between the parties.

The trial court held a final hearing in March 2003. Leininger did not appear in person, appearing only through her attorney. Almost a year later, the divorce decree was signed and filed, awarding the real property to Doughty and giving Leininger a $4,500 equitable lien against the property. Doughty was ordered to sign a promissory note for $4,500, plus ten-percent annual interest, and to make monthly payments on the note. The court made Doughty responsible for the outstanding balance on the real estate loan as well as half of the $22,893.35 owed by the parties on nine credit cards. Leininger filed a motion for rehearing, complaining that she was not present at the hearing; her former attorney never arranged to have the property appraised;[2] and she was not awarded a fair and equitable share of the community estate. The trial court overruled her motion.

Leininger complains on appeal that the trial court applied a different, erroneous valuation method to the real property in question simply because it was bought under a contract for deed. She argues that the court should have applied the same standard in evaluating the equity she and Doughty had in the property as if it had been bought through warranty deed. She contends that

---

[2] Leininger's first attorney filed a motion to withdraw about a week before the trial court signed the decree. Leininger's second attorney filed a motion to withdraw shortly after the trial court overruled the motion for new trial, the same day he filed a request for findings of fact and conclusions of law. The trial court never made findings and conclusions, and Leininger did not file notice that they were overdue. When a trial court does not make findings of fact and conclusions of law, we will presume that the court considered the entire circumstances of the parties in making its division. *Kimsey v. Kimsey*, 965 S.W.2d 690, 704 (Tex. App.—El Paso 1998, pet. denied).

2

by accepting Doughty's valuation of their equity, rather than her proposal, which valued the house at $135,000, the trial court "grossly misevaluated" the community's equitable interest in the property.

In granting a divorce, a trial court must divide the community estate "in a manner that the court deems just and right." Tex. Fam. Code Ann. § 7.001 (West 1998); *Wilkerson v. Wilkerson*, 992 S.W.2d 719, 722 (Tex. App.—Austin 1999, no pet.). We start with a presumption that the trial court properly exercised the broad discretion it is given to divide the community estate and will reverse only if we find a clear abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981). A trial court abuses its discretion if the property division is manifestly unjust and unfair, *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.), but the estate need not be divided equally as long as the division is equitable and justified by the circumstances. *Murff*, 615 S.W.2d at 698-99; *O'Carolan*, 71 S.W.3d at 532. The complaining party must show that the trial court abused its discretion in the overall division of the entire estate. *See Murff*, 615 S.W.2d at 699-700. A buyer under a contract for deed risks losing the property and all payments made up until forfeiture if he fails to make even one contractual payment. *Holmans v. International Mobile Tracking Sys.*, No. 03-95-00240-CV, 1996 Tex. App. LEXIS 4247, at *3-4 (Tex. App.—Austin Sept. 25, 1996, no writ) (not designated for publication) (citing *Sanchez v. Brandt*, 567 S.W.2d 254, 259 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.)).

Leininger did not appear at the hearing, and her attorney said, "She was not able to come this morning from out of state."[3] Leininger presented no evidence other than her proposal for

---

[3] Leininger's attorney stated that Leininger had been informed of the hearing and told that she should attend. At the hearing on Leininger's motion for new trial, Doughty's attorney reminded the trial court that throughout the case, hearings had been postponed and reset about six times

3

the division of property. Doughty appeared at the hearing and testified about the community estate, saying he had not spoken to Leininger or seen J.J. since the parties separated three years earlier. Doughty was still living in the house he and Leininger bought in 1991. He testified that the total purchase price for the property was $23,500, paid by $4,500 in cash and a $19,000 contract for deed to be paid over thirty years at about $140 a month; the parties had made about $5,000 in payments, plus the $4,500 down-payment, and still owed almost $16,000 on the loan. Doughty had been making the house and tax payments himself since Leininger left in June 2000. He also said that the property might be condemned due to possible airport expansion in the future. Doughty testified that when Leininger left, she "took everything that had a plug. She took every picture in the house. She took stuff that I took with me when I left home when I was a teenager. She took—she took everything out of that house." Doughty denied that the credit card debts should be considered community debt, although he agreed that they were incurred during the marriage. He testified that Leininger had denied having the credit cards and had hidden them from him during the marriage. He said "[a]nything that she purchased on those credit cards other than food never came in to the house," but acknowledged that the cards were used to buy items for Leininger and J.J.

After Doughty's testimony concluded and Leininger tendered her proposed property division, Doughty's attorney noted that the parties disagreed on the value of the real property. He said that Doughty used the tax appraised value in his proposed property division, but that it was filed before the attorneys learned that the real estate was under a contract for deed. Doughty's attorney

because Leininger could not attend or had not appeared. Leininger's new attorney responded that Leininger claimed "that she never received notice of those hearings."

4

said that after researching the issue, the value as set by the Board "is nominal until you get at least halfway through the note" and that "there's another four or five years before there would even be any market value to place on a Contract for Deed interest." Both attorneys seemed to agree that because the house was under a contract for deed, the parties had only an equitable interest in the property and that appraisers "can't tell us exactly what it's worth." Doughty's attorney explained that appraisers could not tell whether the house was worth anything above the tax appraisal or whether that appraisal was too high due to the "condemnations and restrictions placed" on the property, which he said could not be sold without the City of Killeen's approval. Leininger's attorney agreed that the house was under threat of condemnation under Killeen's ten-year expansion plan, saying, "[T]here's not any formal letters on it, but it's been mentioned in City Council meetings." Doughty's attorney said, "[T]he only thing I can think to do is to value the total community investment in the property now without a value on the property which would be around between eight and nine thousand dollars if you take purchase price plus current balance on the property and then divide that up."

During his closing, Doughty's attorney asked the trial court to award each party the personal property in their possession, to award the house to Doughty, and to award Leininger reimbursement for "whatever equitable interest [she] may be entitled to" through "some type of judgment against the house if, as, and when title is received and when it's sold so that it can't be cleared until her judgment is exercised." The trial court said, "You've got potentially a huge equity in this house," and Doughty's counsel replied, "But the equity would only result from 19 more years of purchase unless he went out and paid it off early." Leininger's attorney said Leininger wanted

5

"some sort of cash reimbursement for the interest that she has in all of these payments that have been made over the years that they were married."

We hold that Leininger has not shown that the trial court abused its discretion in making its property division. Although Leininger's attorney stated that Leininger had been informed of the hearing and told she should appear, she did not attend the hearing and presented no evidence except for her proposed property division. The only evidence on the value of the real estate was from the parties' proposals for property division. Doughty's proposal valued the real property at almost $76,000, based on a tax appraisal, and Leininger's proposal valued the property at $135,000; Leininger presented no evidence to support her estimated value. Although Doughty's attorney admitted that tax appraisals tend to be lower than true market value, he also stated that the parties had been unable to get an accurate appraisal due to contract-for-deed complications and the possible condemnation issues. Indeed, both parties seemed to be uncertain how to value the property due to the contract for deed, under which the parties' had only an equitable interest that was somewhat uncertain, requiring an assumption that all payments would be made for the remaining seventeen years of the contract. *See Holmans*, 1996 Tex. App. LEXIS 4247, at *3-4 (if parties default on contract for deed, seller may take back property and retain payments made under contract). The parties had paid between $8,000 and $9,000 against the loan on the property, which was threatened with condemnation and under certain restrictions by the City of Killeen.

Doughty testified that Leininger took all of the valuable items from the house when she moved out. He was ordered to pay about $11,500 in credit card debt that he testified he knew nothing about, although he admitted that the cards had been used to buy items for Leininger and J.J.

6

Leininger did not present evidence about how she arrived at her valuation of the real property, the value of the items she took from the house or that Doughty retained, or the credit card debt. Under the circumstances of this case, we hold that Leininger has not shown that the trial court abused its discretion in making its property award. *See Murff*, 615 S.W.2d at 699-700. We affirm the trial court's decree of divorce.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: April 21, 2006

7